**2024-2191**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

TOP BRAND LLC, SKY CREATIONS LLC, E STAR LLC, FLYING STAR LLC

*Plaintiffs/Counter-Defendants-Appellants,*

JOHN NGAN,

*Counter-Defendant/Counter-Claimant-Appellant,*

- v. -

COZY COMFORT COMPANY LLC,

*Defendant/Counter-Claimant-Appellee,*

BRIAN SPECIALE, MICHAEL SPECIALE,

*Defendants/Counter-Defendants-Appellees.*

*On Appeal from the United States District Court for the District of Arizona in No. 2:21-cv-00597-SPL, Judge Steven P. Logan*

## CORRECTED RESPONSE BRIEF FOR APPELLEES COZY COMFORT COMPANY LLC, BRIAN SPECIALE, MICHAEL SPECIALE

JOHANNA M. WILBERT
CHRISTIAN G. STAHL

MICHAEL PIERY
QUARLES & BRADY LLP
411 E. WISCONSIN AVENUE, SUITE 2400
MILWAUKEE, WI 53202
(414) 277-5000
JOHANNA.WILBERT@QUARLES.COM
CHRISTIAN.STAHL@QUARLES.COM
MICHAEL.PIERY@QUARLES.COM

*Counsel for Appellees Cozy Comfort Company LLC,*
*Brian Speciale, Michael Speciale*

DECEMBER 19, 2024

## CLAIMS AT ISSUE

This appeal concerns the single claim of U.S. Design Patent No. D859,788:

> The ornamental design for an enlarged over-garment with
> an elevated marsupial pocket, as shown and described.



# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 24-2191 |
| **Short Case Caption** | Top Brand LLC v. Cozy Comfort Company LLC |
| **Filing Party/Entity** | Cozy Comfort Company LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/23/2024

Signature:  /s/ Christian G. Stahl

Name:  Christian G. Stahl

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Cozy Comfort Company LLC | | |
| Michael Speciale | | |
| Brian Speciale | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| Amish A. Shah<br>(Messner Reeves LLP) | Sharif Ahmed<br>(Messner Reeves LLP) | |
| Gregory P. Sitrick<br>(Messner Reeves LLP) | | |
| Isaac S. Crum<br>(Messner Reeves LLP) | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)    ☑ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

CLAIMS AT ISSUE .................................................................. inside cover

CERTIFICATE OF INTEREST ............................................................. i

TABLE OF CONTENTS................................................................iv

TABLE OF AUTHORITIES .......................................................... vii

STATEMENT OF RELATED CASES.................................................1

STATEMENT OF THE ISSUES....................................................2

STATEMENT OF THE CASE........................................................4

    I.      Introduction ........................................................4

    II.     Cozy Comfort and Its Intellectual Property ..........................................4

    III.   Top Brand Companies and Their Alter Egos.......................................6

    IV.   Top Brand Companies' Products and Sales Records...........................8

        A.    Patent Infringement Accusations ................................................8

        B.    Trademark Infringement ...............................................9

    V.     Appellants' Role In The Jury Trial .........................................12

SUMMARY OF ARGUMENT ................................................................14

STANDARDS OF REVIEW ................................................................16

ARGUMENT ................................................................19

    I.      The District Court Correctly Denied JMOL of No Design
           Patent Infringement .........................................................19

        A.    The district court construed the claim.......................................19

B.    Top Brand waived its claim construction challenge ................22

C.    The district court correctly construed the claim ......................24

D.    Substantial evidence supports the jury's verdict, and a narrower construction would not change the result ...................................................................................26

II.    The District Court Correctly Denied a New Trial ...............................31

A.    Top Brand cannot meet its high bar to establish that the *LKQ* decision warrants a new trial ...............................32

B.    The instruction was correct under *LKQ* ...................................33

C.    The substantial evidence supports the jury's validity verdict, and a different instruction would not change the result ...................................................................................35

III.    Substantial Evidence Supported The Jury Verdict On Trademark Infringement ......................................................................38

IV.    The District Court Properly Addressed Damages ..............................44

A.    Disgorgement is a proper remedy for trademark infringement .................................................................................44

B.    The district court correctly denied JMOL on trademark damages ................................................................45

C.    The Court properly allowed the jury to address damages because Top Brand demanded and consented to a jury on all issues ................................................47

D.    Equitable considerations weigh in favor of an award of profits .........................................................................49

1.    Controlling authority supports the equity of disgorgement .............................................................49

2.    Cozy Comfort carried its burden while Top Brand did not...........................................................50

E.    It was appropriate to disgorge profits for design-patent infringement ............................................................... 52

F.    The trademark infringement award was not a double recovery ................................................................... 54

V.    Substantial Evidence Supported the Jury Verdict On Alter Ego ........ 55

A.    There was significant evidence that there was a unity of control among the Top Brand Companies and Ngan ................................................................ 55

B.    Piercing the corporate veil was necessary to avoid an injustice ................................................................ 65

CONCLUSION ....................................................................... 67

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Syntron Bioresearch, Inc.*,
   334 F.3d 1343 (Fed. Cir. 2003) ...................................................................23

*Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*,
   616 F.2d 440 (9th Cir. 1980) ........................................................................42

*Bischofshausen, Vasbinder & Luckie v. D.W. Jaquays Min. & Equip. Contrs. Co.*,
   700 P.2d 902 (Ariz. Ct. App. 1985)....................................................... 55, 56

*Braun Inc. v. Dynamics Corp. of Am.*,
   975 F.2d 815 (Fed. Cir. 1992) ......................................................................17

*Bridgestone Americas Tire Operations, LLC. v. Fed. Corp.*,
   673 F.3d 1330 (Fed. Cir. 2012) ....................................................................39

*Brookfield Comm.'s, Inc. v. West Coast Ent. Corp.*,
   174 F.3d 1036 (9th Cir. 1999) ......................................................................39

*Castro v. Cty. of Los Angeles*,
   833 F.3d 1060 (9th Cir. 2016) ......................................................................16

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
   80 F.4th 1363 (Fed. Cir. 2023) ....................................................................17

*Cordis Corp. v. Medtronic Ave, Inc.*,
   511 F.3d 1157 (Fed. Cir. 2008),
   *supplemented sub nom., Cordis Corp. v. Bos. Sci. Corp.*,
   275 F. App'x 966 (Fed. Cir. 2008) ................................................ 27, 32, 33, 35

*Crocs, Inc. v. Int'l Trade Comm'n*,
   598 F.3d 1294 (Fed. Cir. 2010) ....................................................................29

*CytoLogix Corp. v. Ventana Med. Sys., Inc.*,
   424 F.3d 1168 (Fed. Cir. 2005) ....................................................................23

*CytoSport, Inc. v. Vital Pharm., Inc.*,
   617 F.Supp.2d 1051 (E.D. Cal. 2009) ................................................45

*Deutsche Credit Corp. v. Case Power & Equip. Co.*,
   876 P.2d 1190 (Ariz. Ct. App. 1994) .................................................64

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
   109 F.3d 1394 (9th Cir. 1997) ...........................................................42

*DSU Med. Corp. v. JMS Co., Ltd.*,
   471 F.3d 1293 (Fed. Cir. 2006) .........................................................16

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
   543 F.3d 665 (Fed. Cir. 2008) ............................................... 20, 24, 26

*Entrepreneur Media, Inc. v. Smith*,
   279 F.3d 1135 (9th Cir. 2002) ...................................................... 39, 43

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
   796 F.3d 1312 (Fed. Cir. 2015) .........................................................25

*Exxon Shipping Co. v. Baker*,
   554 U.S. 471 (2008) ...........................................................................23

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
   618 F.3d 1025 (9th Cir. 2010) ...........................................................43

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   772 F.2d 505 (1985) ............................................................... 44, 45, 52

*Gatecliff v. Great Republic Life Ins. Co.*,
   821 P.2d 725 (Ariz. 1991) ..................................................... 55, 63, 66, 67

*Gilbrook v. City of Westminster*,
   177 F.3d 839 (9th Cir. 1999) .............................................................62

*GoTo.com, Inc. v. Walt Disney Co.*,
   202 F.3d 1199 (9th Cir. 2000) ...........................................................39

*Graham v. John Deere Co. of Kansas City*,
   383 U.S. 1 (1966) ................................................................ 33, 34, 35, 36

*Grober v. Mako Prods., Inc.*,
   686 F.3d 1335 (Fed. Cir. 2012) ...............................................25

*Harper v. City of L.A.*,
   533 F.3d 1010 (9th Cir. 2008) ................................................38

*Hewlett-Packard Co. v. Mustek Sys., Inc.*,
   340 F.3d 1314 (Fed. Cir. 2003) ...............................................22

*Hewlett-Packard Co. v. Packard Press, Inc.*,
   281 F.3d 1261 (Fed. Cir. 2002) ...............................................42

*Hildebrand v. Bd. of Trs. of Mich. St. U.*,
   607 F.2d 705 (6th Cir. 1979) ...................................................49

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   2009 WL 112834 (N.D. Cal. Jan. 16, 2009).............................32

*In re Viterra Inc.*,
   671 F.3d 1358 (Fed. Cir. 2012) ...............................................40

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
   589 F.3d 1233 (Fed. Cir. 2009) ...............................................25

*InTouch Techs., Inc. v. VGO Comm., Inc.*,
   751 F.3d 1327 (Fed. Cir. 2014) ...............................................37

*Ize Nantan Bagowa, Ltd. v. Scalia*,
   577 P.2d 725 (Ariz. Ct. App. 1978).........................................64

*Jes Solar Co. Ltd., v. Matinee Energy Inc.*,
   823 F. App'x 545 (9th Cir. 2020) ...........................................18

*Keg Rests. Ariz., Inc. v. Jones*,
   375 P.3d 1173 (Ariz. Ct. App. 2016)......................................... 55, 65, 67

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*
    150 F.3d 1042 (9th Cir. 1998) ...............................................................43

*Keybank N.A. v. Neumann Dermatology LLC,*
    2022 WL 16635372 (D. Ariz. 2022) ....................................... 56, 62, 65

*KSR Int'l Co. v. Teleflex Inc.,*
    550 U.S. 398 (2007) ................................................................ 32, 33, 35

*Leroy's Horse & Sports Place v. Racusin,*
    21 F. App'x 716 (9th Cir. 2001) ...........................................................18

*Lindy Pen Co., Inc. v. Bic Pen Corp.,*
    982 F.2d 1400 (9th Cir. 1993) ....................................................... 44, 51

*LKQ Corp. v. GM Glob Tech. Operations, LLC,*
    102 F.4th 1280 (Fed. Cir. 2024) ................................................. passim

*Lucent Techs., Inc. v. Gateway, Inc.,*
    580 F.3d 1301 (Fed. Cir. 2009) ............................................................16

*Maier Brewing Co. v. Fleishmann Distilling Corp.,*
    390 F.2d 117 (9th Cir. 1968) ......................................................... 44, 50

*McClaran v. Plastic Indus.,*
    97 F.3d 347 (9th Cir. 1996) .................................................................45

*Medisim Ltd. v. BestMed, LLC,*
    758 F.3d 1352 (Fed. Cir. 2014) ...........................................................24

*Mid America Title Co. v. Transnation Title Ins. Co.,*
    332 F.3d 494 (7th Cir. 2003) ...............................................................64

*Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.,*
    316 U.S. 203 (1942) ..............................................................................50

*Monster Energy Co. v. Integrated Supply Network, LLC,*
    533 F. Supp. 3d 928 (C.D. Cal. 2021) ................................................50

*Nautilus Grp., Inc. v. ICON Health & Fitness, Inc.*,
    372 F.3d 1330 (Fed. Cir. 2004) ........................................................18

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
    138 F.3d 1437 (Fed. Cir. 1998) ........................................................52

*Nina Ricci, S.A.R.L. v. E.T.F. Enterprises, Inc.*,
    889 F.2d 1070 (Fed. Cir. 1989) ........................................................42

*Nintendo of Am., Inc. v. Dragon Pac. Int'l*,
    40 F.3d 1007 (9th Cir. 1994) ............................................................52

*Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*,
    20 F.4th 466 (9th Cir. 2021) ............................................................16

*Osseo Imaging, LLC v. Planmeca USA Inc.*,
    116 F.4th 1335 (Fed. Cir. 2024) ......................................................16

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
    739 F.3d 694 (Fed. Cir. 2014) .................................................... 27, 28

*Pavao v. Pagay*,
    307 F.3d 915 (9th Cir. 2002) ............................................................40

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
    35 F.4th 1367 (Fed. Cir. 2022) ........................................................17

*Perfumebay.com Inc. v. eBay, Inc.*,
    506 F.3d 1165 (9th Cir. 2007) ..........................................................40

*Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*,
    692 F.2d 1272 (9th Cir. 1982) ..........................................................50

*Punchbowl, Inc. v. AJ Press, LLC*,
    90 F.4th 1022 (9th Cir. 2024) ..........................................................41

*Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*,
    970 F.2d 552 (9th Cir. 1992) ............................................................49

*Romag Fasteners, Inc. v. Fossil, Inc.*,
    590 U.S. 212 (2020) ............................................................................49

*S.C. Johnson & Son, Inc. v. Drop Dead Co.*,
    210 F. Supp. 816 (S.D. Cal. 1962) ....................................................40

*Samsung Elecs. Co., Ltd. v. Apple Inc.*,
    580 U.S. 53 (2016) ...................................................................... 52, 53

*Sanderson v. Chapman*,
    487 F.2d 264 (9th Cir. 1973) .............................................................34

*Saxlehner v. Eisner & Mendelson Co.*,
    179 U.S. 19 (1900) ............................................................................39

*SEC v. Jensen*,
    835 F.3d 1100 (9th Cir. 2016) ...........................................................62

*Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) ...................................................... 17, 33

*Snyder v. Freight, Const., Gen. Drivers, Warehousemen & Helpers, Loc. No. 287*,
    175 F.3d 680 (9th Cir. 1999) .............................................................32

*Sulzer Textil A.G. v. Picanol N.V.*,
    358 F.3d 1356 (Fed. Cir. 2004) .........................................................32

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    574 U.S. 318 (2015) ..........................................................................17

*Thomas v. Broward Cty. Sheriff's Off.*,
    71 F.4th 1305 (11th Cir. 2023) .................................................... 47, 48

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
    768 F.2d 1001 (9th Cir. 1985) ...........................................................18

*U.S. v. Christensen*,
    828 F.3d 763 (9th Cir. 2015) .............................................................33

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
   546 U.S. 394 (2006)..............................................................................23

*Weeks v. Angelone*,
   528 U.S. 225 (2000)..............................................................................53

*Youngren v. Rezzonico*,
   543 P.2d 142 (Ariz. Ct. App. 1975)............................................. 63, 66

**Statutes**

15 U.S.C. §1117................................................................. 44, 46, 49, 50

35 U.S.C. §289................................................................................52

**Rules**

Fed. R. Civ. P. 39 ............................................................................ 47, 48

Fed. R. Civ. P. 50(a).................................................................... passim

Fed. R. Civ. P. 50(b) ................................................................. 14, 23, 24

**Other Authorities**

*Rosen-Durling* Test........................................................................ passim
   *In re Rosen*, 673 F.2d 388 (C.C.P.A. 1982)
   *Durling v. Spectrum Furniture Co.*, 101 F.3d 100 (Fed. Cir. 1996)

## STATEMENT OF RELATED CASES

Under Federal Circuit Rule 47.5(a), Appellees Cozy Comfort, LLC; Michael Speciale; and Brian Speciale are aware of the following cases pending in this or any other tribunal that may directly affect or be directly affected by the Court's decision in this case:

- *Cozy Comfort Company LLC v. The Individuals, Corporations Limited Liability Companies, Partnerships, and Unincorporated Associations Identified in Schedule A to Complaint*, No. 1:23-cv-16563 (N.D. Ill.);
- *Cozy Comfort Company LLC v. Larger Than Average LLC et al.*, No. 2:24-cv-00185 (D. Ariz) (transferred to W.D. Mo. June 12, 2024, but not yet docketed); and
- *Cozy Comfort Company LLC v. ABC Company*, No. 2:24-cv-00184 (D. Ariz.).

## STATEMENT OF THE ISSUES

1. Did the district court correctly deny Appellants' motion for JMOL on design patent infringement where (i) it rejected Appellants' claim construction and declined to adopt a verbal description of the design patent claim while explaining that it was willing to revisit the construction if necessary, (ii) Appellants did not request the court further about claim construction at the jury instruction phase or in a Rule 50(a) motion, and (iii) even under Appellants' proposed construction a reasonable jury still would have substantial evidence to find infringement because the accused design is still closer to the patent design?

2. Where the district court instructed the jury to consider the same factors and legal test as this Court recently set forth in *LKQ Corp. v. GM Glob Tech. Operations, LLC*, 102 F.4th 1280 (Fed. Cir. 2024) (en banc), did it abuse its discretion in denying a new trial on obviousness?

3. Did the district court correctly deny Appellants' motion for JMOL on trademark non-infringement where there was substantial evidence presented at trial from which a reasonable jury could find Appellants infringed Cozy Comfort's trademark?

4. Did the district court abuse its discretion in granting disgorgement where Appellants failed to provide evidence at trial that the requested patent and

trademark damages overlapped (because those damages, in fact, covered distinct products)?

5.     Did the district court correctly deny Appellants' motion for JMOL on the issue of alter ego where there was substantial evidence presented at trial from which a reasonable jury could find that Top Brand LLC, E Star LLC, and Flying Star LLC were alter egos of John Ngan?

## STATEMENT OF THE CASE

### I.    Introduction

This is an appeal from a three-week jury trial and the district court's rulings related to that trial in which Appellants were found liable for patent and trademark infringement.  That the substantial similarity between the parties' products—and their identical use of COMFY—is likely to cause confusion in the marketplace cannot seriously be disputed.  Moreover, with stipulated sales records showing substantial profits from sales of the accused products, Ngan's conflicting statements about his companies' finances, and lack of evidence to rebut the showing of revenue, this appeal becomes even more untenable.  In short, the jury's verdict and the district court's rulings denying JMOL and a new trial should be affirmed.  These decisions are supported by substantial evidence from a voluminous record and correct as a matter of law.

### II.    Cozy Comfort and Its Intellectual Property

The Speciale brothers started Cozy Comfort in April 2017 with a new idea for a product: an oversized, wearable blanket with an oversized hood and oversized arm coverings named THE COMFY.  Appx23196-23197, Appx24397 (23:2-20), Appx24408 (34:11-24), Appx24441 (67:4-12).  THE COMFY features a layer of fleece on one side and thick sherpa material on the other, and a large front pocket that the wearer can use for comfort, warmth, or storage.  Appx24397 (23:8-14).  THE

COMFY logo and name are found in the lower left portion of the pocket. Appx23196-23197.

In 2017, no other wearable blanket with this design was in the market. To protect this innovative product and unique name, Cozy Comfort secured patent and trademark rights, including what is now U.S. Design Patent No. D859,788, and trademark registrations for THE COMFY, including Reg. Nos. 5,608,347 and 5,712,456. While in its early stages, Cozy Comfort auditioned on *Shark Tank* and THE COMFY was featured in a December 3, 2017 episode where the sharks displayed enthusiasm for the product and one ultimately invested. Appx24402-24407 (28:1-33:16). THE COMFY has also enjoyed positive reviews, social media postings, celebrity endorsement, and countless mentions on national and local television programs. Appx24430-24441 (56:24-67:3). THE COMFY is also sold at many online and physical retail outlets, including Costco, Target, Kohl's, Amazon, thecomfy.com, and has even been featured multiple times on QVC. Appx24412, (38:6-18), Appx24430-24441 (56:24-67:12), Appx24446 (72:1-23). As of trial, Cozy Comfort had sold approximately $300 million in revenue, making The Comfy the most recognizable wearable blanket on the market. Appx24449 (75:1-7).

### III.   Top Brand Companies and Their Alter Egos

Due to its innovative design and THE COMFY's creation of a new market segment, knock offs, copycats, and cheap imitations of THE COMFY's patented design soon followed.

John Ngan, a counter-defendant in the case below and a counter-claimant-appellant in this appeal, is the mastermind behind the infringing conduct from his various businesses, including Appellants Top Brand, Sky Creations, E Star, and Flying Star, of which he is the sole owner and beneficiary.  Appx23783-23784 (211:23-212:25).  As the jury found, Appellants Top Brand, E Star, and Flying Star are all alter egos of one another and all under complete control of Appellant Ngan.[1] Appx25218  (13:11-21),  Appx23824-23830  (21:24-27:18),  Appx23849-23850 (46:17-47:19).

Specifically, Top Brand LLC is a customer facing business that sells product through Appellants' Catalonia and Tirrinia brands through Amazon and websites ultimately controlled by Ngan, www.tirrinia.net and www.cataloniastore.com. Appx23786-23789 (214:5-217:10), Appx23798-23799 (226:7-227:11).  Top Brand LLC is charged a management fee and other fees and costs by its Co-Appellant,

---

[1] In this brief, "Appellants" refers to all of the Appellants; "Top Brand" or "Top Brand Companies" refers to Appellants Top Brand, Flying Star, and E Star; "Ngan" refers to Appellant John Ngan; and "Sky Creations" refers to Appellant Sky Creations.

Flying Star, that equals, almost to the penny, its revenue.  Appx23866-23868 (63:2-65:4), Appx23869 (66:7-24), Appx22777-22825, Appx18168-18208, Appx24865-24866 (125:3-126:11).

Similarly, E Star is a customer facing business that also sells product through Appellants' Catalonia and Tirrinia brands through  Amazon and Ngan-controlled websites,  www.tirrinia.net  and  www.cataloniastore.com.    Appx23786-23789 (214:5-217:10), Appx23798-23799 (226:7-227:11).   Like Top Brand, E Star is charged a management fee and other fees and costs by its Co-Appellant, Flying Star, that equals, almost to the penny, its revenue.  Appx23865-23866 (62:14-63:19), Appx18130-18167, Appx24865-24866 (125:3-126:11).

Appellant Sky Creations is a company Ngan created to purchase intellectual property rights it could assert against Cozy Comfort and to lease those intellectual property rights to the other alter ego Appellants.  Appx23684-23685 (112:21-113:9), Appx23786 (214:5-13).

Like Top Brand and E Star, Flying Star is consumer facing in the same manner.   Appx23786-23789 (214:5-217:17), Appx23798-23799 (226:7-227:11).  However, it collects revenues from Top Brand and E Star through management and other fees (including raising warehouse storage rent[2]) and itself pays management

---

[2] Coincidentally, the warehouse is ultimately owned by Ngan through another non-party entity.

fees, other fees, and money transfers to other non-parties. Appx23869-23878 (66:7-75:1), Appx22574-22637, Appx24865-24866 (125:3-126:11).

Ngan has complete control over his Co-Appellants. Appx23824-23830 (21:24-27:18). Ngan makes all decisions and makes all agreements and licenses, many of which reside only in his head. Appx23824-23830 (21:24-27:18), Appx23849-23850 (46:17-47:19).

## IV.    Top Brand Companies' Products and Sales Records

Appellants' Opening Brief inaccurately describes the Top Brand Companies' different products, and the sales associated with those products. This inaccuracy becomes critical to the issues on appeal when Appellants inaccurately allege the damage award could only be a result of double-counting or that there is no record evidence on damages.

Despite Top Brand's characterizations, the products accused of trademark infringement and those accused of patent infringement are not identical. Certain products associated with the trademark infringement were never accused of patent infringement.

### A.    Patent Infringement Accusations

Top Brand Companies began selling their version of a wearable blanket in 2018, before the '788 Patent had issued. Top Brand quickly expanded its wearable blanket products to include twelve product lines. Cozy Comfort accused eight of

these lines of patent infringement (HD100, HD100S, HD101, HD120, HD200, HD201, HD210, and HD250).  Four product lines (HD130, HD220, HD230, and HD300) were not accused of patent infringement.

## B.    Trademark Infringement

Cozy Comfort presented evidence at trial that Top Brand Companies used the term COMFY online to sell wearable blankets.  Specifically, Ngan testified that his Catalonia store website used "Comfy" as the name of a product line category under the heading "Wearable Blanket."  Appx20492, Appx23772-23773 (200:17-201:15).  This use was shown repeatedly at trial as Exhibit 594.  The below shows "Comfy" as its own product within the Wearable Blanket category:



If users clicked on the "Comfy" link, they were re-directed to an Amazon store to have their orders fulfilled. Appx23773 (201:1-23). In accounting for sales, those sales are included in Amazon sales receipts. Appx23799 (227:2-11).

Despite seeming to now claim the record had no evidence of sales, the parties stipulated to the admission of summary reports of the Amazon sales as Trial Exhibits 644 and 832 on the first day of trial. Appx23120-23127, Appx25223-25229. Exhibit 644 provided Amazon sales data for Wearable Blankets sold by Top Brand Companies from 2018 through 2021. Appx23120-23127. Exhibit 832 provided Amazon sales data from 2022 through 2024. Appx25223-25229. Appellants made no objection to their admission. Appx23517-23518 (13:3-14:12). Reference to these sales summaries were made throughout the trial, including during the testimony of Cozy Comfort's damage expert, Bryce Cook, who testified that he looked at these documents when computing his damage numbers. Appx24841-24842 (101:1-102:20).

The Amazon sales data was also relevant to other evidence of trademark infringement, including evidence showing instances of consumer confusion. In the comment section for an Amazon listing of one of Top Brands' products, written responses to the question, "is this the real brand 'comfy'?", included "Yes, It is" and "The Comfy, yes." Appx20469-20477, Appx23788-23789 (216:1-217:10).

In response to the trial evidence, the jury found that Top Brand's use of "comfy" was likely to cause confusion with Cozy Comfort's registered trademarks. Appx25216-25217 (11:15-12:11), Appx14568.

The Amazon data proves that Top Brand made over $60 million in sales of its wearable blankets since 2018. Appx24848-24849 (108:22-109:25), Appx24869-24870 (129:18-130:2). The jury heard from Cook that damages for patent infringement did not begin until the patent first issued, in September 2019. Appx24873-24874 (133:25-134:17). Thus, the sales in 2018 and the first three quarters of 2019 were only associated with the trademark infringement claims, and were never presented as part of the patent infringement case. During that period, Top Brand Companies had revenues over $6.2 Million in wearable blankets across the HD100, HD200, HD201, and HD210 lines. Appx23120-23127. Further, Amazon sales summaries included four other lines of wearable blankets that were not accused of patent infringement, the HD130, HD220, HD230, and HD300. As shown in Exhibit 644, these four lines had sales revenues of over $3.5 million in 2020 and 2021. Ultimately, the evidence presented at trial showed almost $10.5 million in revenue from the sale of wearable blankets that do not overlap with profits associated with the patent infringement allegations.

## V.    Appellants' Role In The Jury Trial

From the initial pleadings through the point at which they received an unfavorable verdict, Appellants had consistently maintained they wanted a jury's verdict on all issues.  Hindsight combined with an unfavorable verdict seems to have also caused Appellants to look at its original position on the jury differently and has caused it to gloss over key facts regarding its role in the jury instructions, verdict form, and the process in general.

With respect to claim construction Appellants could have asked the district court to revisit its claim construction but did not do so at any time during the three-week trial or at the jury instruction phase.   Appx25009-25010 (63:20-64:2).  Appellants did not object to the district court's infringement instruction or otherwise object to the district court's claim construction.   When the district court asked if Appellants had any objection to the '788 Patent infringement instruction, Appellants responded that "[t]here is no objection to Direct Infringement."  Appx25009 (63:20-23).  The district court responded, "Okay. Well, that instruction will be given in its present form."  Appx25009 (63:24-25).   The direct infringement instruction was given to the jury.  Appx14554.

With respect to damages, all parties jointly submitted proposed damages instructions.  Those joint submissions, signed and filed with Appellants' approval, asked the jury to return a verdict on damages.  For example, Appellants proposed

the ultimate jury instruction on "Trademark Damages," taken directly from the Ninth Circuit Manual of Model Jury Instructions (§15.29), asked the jury to determine and award profits.  Appx12131.  With respect to the Patent Damages instruction, when discussing the matter with the district court, Appellants stated they had "no objection" to the instruction asking the jury to determine total profits.  Appx24982 (36:3-14).  The parties submitted and stipulated to a proposed jury verdict form that included a request that the jury return a verdict on damages.  Appx25031 (85:1-22.)

It was not until post-trial motions that Appellants first argued they should not have been given to the jury they requested or that the instructions and verdict form were not to what they had themselves agreed.

# SUMMARY OF ARGUMENT

The judgment should be affirmed.

I.     Substantial evidence supports the district court's denial of JMOL on infringement.  The district court properly construed the '788 Patent when it refused to provide a detailed verbal construction of a design claim.  Further, because Top Brand did not raise claim construction as grounds for JMOL in its Rule 50(a) motion, it was improper for Top Brand to raise those grounds in its Rule 50(b) motion.  Finally, substantial evidence supports the jury's verdict on infringement, and there is no basis to believe a narrower construction would have changed the result.

II.    The district court did not abuse its discretion in denying a new trial because its instruction correctly apprised the jury of the law regarding obviousness.

III.   Substantial evidence supports the jury's finding that the use of "Comfy" infringed the registered mark THE COMFY.  The damages decision properly allowed disgorgement as a remedy because Cozy Comfort met its burden of proving revenue figures through the stipulated admission of two exhibits evidencing sales summaries from relevant Amazon sales.  There was no double recovery because the trademark damages

period covers time before the patent issued, where there were no patent damages, and included four product lines that were not at issue.

IV. The court properly allowed the parties to submit all issues to the jury, consistent with Top Brand's demand. If Top Brand wanted an advisory verdict or a bench trial on certain issues, it needed to make its new position known before the jury verdict.

V. The court properly denied JMOL on alter ego because substantial evidence supported the conclusion that Ngan has complete control over his Co-Appellants and used it to strip his companies of assets to avoid having to satisfy potential damages awards.

## STANDARDS OF REVIEW

The Court reviews the denial of a JMOL motion under the law of the regional circuit. *See Osseo Imaging, LLC v. Planmeca USA Inc.*, 116 F.4th 1335, 1339 (Fed. Cir. 2024). In that circuit, the standard of review is *de novo*, and "[a] jury verdict will be upheld if supported by substantial evidence." *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co., Ltd.*, 20 F.4th 466, 476 (9th Cir. 2021). "Substantial evidence" is "evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016). "In assessing the jury's verdict, [evidence] may not be weigh[ed]"; instead, the question is "simply . . . whether the plaintiff has presented sufficient evidence to support the jury's conclusion." *Id.*

Denial of a motion for a new trial is reviewed for abuse of discretion. *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1302 (Fed. Cir. 2006). This Court affirms on any basis that supports the verdict. *Id.*

This Court reviews a district court's decision concerning the methodology for calculating damages for an abuse of discretion. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1310 (Fed. Cir. 2009). This Court reviews a jury's determination of the amount of damages for substantial evidence. *Id.* A jury's damages award must be upheld unless the amount is grossly excessive or monstrous, clearly not supported

by the evidence, or based only on speculation or guesswork. *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 35 F.4th 1367, 1378-79 (Fed. Cir. 2022).

This Court also reviews jury instructions under regional circuit law. *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1376 (Fed. Cir. 2023). The Ninth Circuit reviews for abuse of discretion, the formulation of the instructions, and reviews *de novo* whether the instructions accurately state the law. *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051, 1065 (9th Cir. 2020). The Ninth Circuit considers the issued instructions as a whole, but reversal is not warranted if the error is more probably than not harmless. *Id.* When a civil litigant fails to object to a jury instruction, the Ninth Circuit reviews the challenged instruction for plain error. *Id.* Under plain error review, the Ninth Circuit considers whether (1) there was an error; (2) it was obvious; and (3) it affected substantial rights. *Id.* at 1073. Even where these demanding requirements are met, the decision whether to correct plain error is discretionary, typically invoked only to prevent a miscarriage of justice. *Id.*

Claim construction is a legal issue reviewed *de novo* with subsidiary factual findings reviewed for clear error. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). Infringement determinations are reviewed for substantial evidence. *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 819 (Fed. Cir. 1992).

A jury's likelihood of confusion determination is reviewed under Ninth Circuit law for substantial evidence. *See, e.g.*, *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1013-16 (9th Cir. 1985); *Nautilus Grp., Inc. v. ICON Health & Fitness, Inc.*, 372 F.3d 1330, 1334 (Fed. Cir. 2004).

Arizona law governs the issue of corporate separateness. *See Jes Solar Co. Ltd., v. Matinee Energy Inc.*, 823 F. App'x 545, 546 (9th Cir. 2020). A jury's alter ego finding is reviewed for substantial evidence. *See Leroy's Horse & Sports Place v. Racusin*, 21 F. App'x 716, 718 (9th Cir. 2001).

# ARGUMENT

## I.   The District Court Correctly Denied JMOL of No Design Patent Infringement

Top Brand's appeal as to the denial of JMOL of no design patent infringement is based on its incorrect assertion that the district court did not construe the '788 Patent.  At the claim construction and summary judgment stages, the district court correctly rejected Top Brand's narrow construction and declined to adopt a verbal description of the claim, while explaining that it was willing to revisit the construction at trial if necessary.  Top Brand declined this invitation, waiving its claim construction arguments by not asking the district court to revisit them at the jury instruction phase or in its Rule 50(a) motion.  Even if these arguments are not waived, reversal or a new trial are not warranted because, under Top Brand's narrow construction, a reasonable jury would still find infringement, as evidenced by the jury's implicit finding that the accused design and claimed design are significantly closer than the accused design and the prior art sweatshirt design.

### A.   The district court construed the claim

Top Brand is wrong that the district court shirked its duty to construe the '788 Patent.  During the claim construction process, Top Brand proposed a detailed verbal description of the claim, describing the pocket's shape and placement, the hood's shape and form, and the hem's shape and form.  Appx03991-03994,

Appx05272-05274.  The district court rejected Top Brand's construction multiple times and adopted Cozy Comfort's construction.

In its claim construction order, the district court construed the '788 Patent as "[t]he ornamental design for an enlarged over-garment with an elevated marsupial pocket, as shown and described in Figures 1-10."  Appx06998, Appx06991 ("The design patents in issue (the '788, '416, '237, and '380 patents) are construed as they are presently written.").  The district court recognized the risks of providing a detailed verbal construction of a design claim and declined to do so.  Appx06982. Not only is this a proper claim construction—it is the preferred construction in design patent cases. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) ("Given the recognized difficulties entailed in trying to describe a design in words, the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design.").  The district court acknowledged Top Brand's arguments related to prosecution history disclaimer but found this issue to be premature and better addressed later in the case.  Appx06990.  Accordingly, the district court rejected Top Brand's prosecution history arguments.  Appx06990-06991.

Later, when Top Brand raised this issue at summary judgment, the district court again rejected the proposed construction.  It stated that it "repeats its claim construction holding" that rejected Top Brand's construction and adopted Cozy

Comfort's construction, explaining that factual disputes on the issues of functionality and prosecution history precluded a finding of unambiguous disavowal that would justify adopting Top Brand's suggested construction at the summary judgment stage. Appx10945.

The district court left the door open to revisiting its claim construction but never stated that it would provide a detailed verbal description. Appx10945-10946. Top Brand misconstrues the district court's statement that its construction is not "an absolute and unalterable resolution on the scope" of the claim. Opening Br. 14. The district court did not make this statement to indicate that claim construction was unresolved but instead to recognize that "claim construction is an ongoing process that can be revisited *if necessary*." Appx10946 (emphasis added).

At trial, consistent with its decision identifying factual disputes, the district court permitted Top Brand to introduce evidence about the '788 Patent's prosecution history, allowing multiple witnesses to testify about the file history, including the differences between the patented design and the prior art references relevant to Top Brand's disavowal theory. Appx23955-23956 (152:10-153:11), Appx23961-23962 (158:2-159:9), Appx24005-24007 (202:23-204:20), Appx24197-24201 (160:11-164:11).

After hearing the evidence, the district court declined to change its claim construction in the jury instructions. Appx14554. The district court ultimately

instructed the jury consistent with the claim construction order and without an unnecessary verbal claim construction. In sum, the district court properly construed the claim.

### B.    Top Brand waived its claim construction challenge

Given the district court's openness to revisiting its claim construction, Top Brand could have raised its disclaimer arguments at the instruction phase and before the district court submitted the case to the jury. By choosing not to raise its arguments, Top Brand waived its claim construction challenge in two ways.

First, Top Brand waived its claim construction arguments by agreeing to the direct infringement instruction. "[P]arties cannot reserve issues of claim construction for the stage of post-trial motions." *Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1320 (Fed. Cir. 2003). When issues of claim construction have not been properly raised in connection with the instructions, it is improper for the district court to adopt a new or more detailed claim construction in connection with the JMOL motion. *Id.* "[W]here the parties and the district court elect to provide the jury only with the claim language itself, . . . it is too late at the JMOL stage to argue for or adopt a new and more detailed interpretation of the claim language . . . ." *Id.* at 1321.

Here, Top Brand did not object to the infringement instruction or otherwise object to the claim construction. When the court asked if Top Brand objected to the

infringement instruction, Top Brand said, "[t]here is no objection to Direct Infringement." Appx25009 (63:20-25). The court responded, "Okay. Well, that instruction will be given in its present form." Appx25009 (63:20-25). That instruction was given to the jury. Appx14554.

Because Top Brand did not object, the challenged issue on JMOL was only "whether substantial evidence supported the verdict under the agreed instruction." *CytoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1177 (Fed. Cir. 2005). Top Brand "cannot wait until after the jury returns a verdict against it and then on JMOL request a different construction." *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1352 (Fed. Cir. 2003).

Second, Top Brand waived its claim construction argument by not raising it in a Rule 50(a) motion. Rule 50 sets forth the procedural requirements for challenging the sufficiency of the evidence. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 399 (2006). First, a party can challenge the sufficiency of the evidence before submitting the case to the jury. Fed. R. Civ. P. 50(a). Second, a party can renew a sufficiency of the evidence challenge after the jury verdict. Fed. R. Civ. P. 50(b). Rule 50(a) and (b) are linked together, as "[a] motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008). This Court has "found that parties forfeited the right to

move under Rule 50(b) by failing to first properly move under Rule 50(a)." *Medisim Ltd. v. BestMed, LLC*, 758 F.3d 1352, 1356 (Fed. Cir. 2014).

Top Brand did not raise claim construction in its Rule 50(a) motion. With respect to the '788 Patent, its only Rule 50(a) argument was for JMOL "on non-infringement of the '788 and '416 design patents." Appx25147. Because Top Brand did not raise claim construction in its Rule 50(a) motion, it was improper to raise it in its Rule 50(b) motion. Accordingly, Top Brand forfeited its claim construction argument. *Medisim*, 758 F.3d at 1356.

### C.     The district court correctly construed the claim

Top Brand's challenge also fails because the district court correctly rejected Top Brand's prosecution disclaimer arguments and declined to provide a detailed verbal description. While Top Brand does not identify a specific construction, it asserts that Cozy Comfort "limited the scope of the claimed sweatshirt with respect to its marsupial pocket's size and location, its armhole positioning, and the slope and appearance of its bottom hem." Opening Br. 34. Top Brand has not shown that Cozy Comfort clearly and unambiguously narrowed the scope of the '788 Patent during prosecution.

In design patent cases, it is preferable not to provide a detailed verbal construction. *Egyptian Goddess*, 543 F.3d at 679. An exception may arise "[w]hen a patentee makes a clear and unmistakable disavowal of scope during prosecution."

24

*Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1341 (Fed. Cir. 2012) (internal quotations omitted). If a patentee makes a clear disavowal, "a claim's scope may be narrowed under the doctrine of prosecution disclaimer." *Id.* "However, while the prosecution history can inform whether the patentee limited the claim scope in the course of prosecution, it often produces ambiguities." *Id.* "Therefore, the doctrine of prosecution disclaimer only applies to unambiguous disavowals." *Id.*

The nature of design patents renders any purported disavowal ambiguous. Under the ordinary observer test for anticipation, differences must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015); *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009) (ordinary observer test is the sole test for anticipation). Cozy Comfort's arguments during prosecution did not clearly surrender subject matter but instead identified many differences in the claimed design that "collectively create a different and distinct impression from that of the [prior art] White hoodie." Appx15109. Top Brand identifies each individual feature in isolation as a distinct "surrender" of subject matter. That misapplies the ordinary observer test. Cozy Comfort identified individual features as examples to demonstrate why the overall ornamental appearances were not the same. Appx15106 (two designs "are not substantially the same"). Indeed, Cozy Comfort

explained that the "exaggerated size provides differences from the White design" and then discussed the numerous aspects that created a different overall appearance. Appx15107.  Cozy Comfort concluded that "[f]or *all* of the above reasons . . . the two designs are not substantially the same."  Appx15110 (emphasis added).

By arguing that the combination of these differences creates a substantially dissimilar overall appearance, Cozy Comfort did not clearly disavow any one feature.  For example, it did not clearly disavow all designs that have a lower marsupial pocket than the claimed design.  Such a finding would violate the ordinary observer test's requirement to consider the overall effect of differences on the design as a whole.  *Egyptian Goddess*, 543 F.3d at 677.  In other words, it would violate the ordinary observer test to preclude a finding of infringement of an otherwise identical design having a lower marsupial pocket because that was not the only basis for distinguishing the White reference's overall ornamental appearance.  The district court correctly declined to find an unmistakable disavowal necessitating a verbal construction.

## D.     Substantial evidence supports the jury's verdict, and a narrower construction would not change the result

Top Brand's argument on infringement ignores the test for design patent infringement and is contradicted by the record.  Opening Br. 38-41.  Even if the district court's construction was not sufficiently narrow, there is no basis for a new trial.

Cozy Comfort submitted more than sufficient evidence to support a finding of infringement, including the patent and physical samples of the accused products, (Appx23515-23516 (11:22-12:10), Appx24575 (7:8-18), Appx17059-17066, Appx15070-15079), and testimony from Cozy Comfort's garment design expert Mr. Crumley. Mr. Crumley compared the patented design to physical samples of the accused products and online images. Appx24574 (6:6-10), Appx24574-24575 (6:24-7:4). He testified that he was familiar with the prior art and considered it in his analysis. Appx24574 (6:11-23). He testified how an ordinary observer would have found the accused and claimed designs substantially similar. Appx24574-24581 (6:24-13:17), Appx24582-24583 (14:13-15:8).

Top Brand has not shown that a narrowing jury instruction would change the jury's well-supported verdict. "[E]ven in the case of an unequivocal disavowal of claim scope, the court must construe the claim 'congruent with the scope of the surrender.'" *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008), *supplemented sub nom., Cordis Corp. v. Bos. Sci. Corp.*, 275 F. App'x 966 (Fed. Cir. 2008). If there was an unmistakable surrender for patentability, the accused design is not within the scope of the surrender.

This Court's analysis in *Pacific Coast Marine* is instructive. *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 704-05 (Fed. Cir. 2014). In *Pacific Coast Marine*, prosecution history estoppel did not preclude an

27

infringement determination. *Id.* During prosecution, the examiner had issued a restriction requirement, asking the applicant to identify only one claimed boat windshield design. *Id.* at 698. The applicant elected the windshield design with four holes and canceled the figures that showed two holes. *Id.* This Court rejected the argument that the applicant disavowed all designs in the range between four and two holes, recognizing that the range concept does not work in the context of design patents. *Id.* at 704-05. This Court held that "[t]he applicant surrendered the claimed design with two holes on the windshield corner post, but neither submitted nor surrendered any three-hole design." *Id.*

Like the court's error in *Pacific Coast Marine*, Top Brand here erroneously contends that Cozy Comfort surrendered the full range between the claimed design and the White reference. Opening Br. 38-40. Contrary to these assertions, Cozy Comfort did not surrender the full range between the width of the claimed pocket and the width of the White pocket. Nor did Cozy Comfort surrender the full range of pocket positioning relative to the armholes or the full range of hemline slopes between the claimed design and the White design. Just as the patentee in *Pacific Coast Marine* did not surrender the range between four holes and two holes, Cozy Comfort did not surrender the range between the claimed design and the White design. At most, Cozy Comfort surrendered designs having a substantially similar

appearance to the White design.  And Top Brand has adduced no evidence that its accused products are substantially similar to that design.

There is no basis for overturning the jury verdict or ordering a new trial based on this alleged surrender.  The test for infringement requires that the accused product and the patented design be compared in light of the prior art.  *See Crocs, Inc. v. Int'l Trade Comm'n,* 598 F.3d 1294, 1303 (Fed. Cir. 2010) (design patent is infringed where hypothetical ordinary observer "familiar with prior art designs, would be deceived into believing the accused product is the same as the patented design").  This three-way comparison eliminates the possibility that the patentee will recapture claim scope that was surrendered for reasons related to novelty.

Top Brand presented and discussed the patent's prosecution history and the White reference.  Top Brand introduced evidence about the state of the art, including differences between the '788 Patent and the White reference, and walked multiple witnesses through the file history in front of the jury.  Appx23673 (admitting White reference), Appx23515 (admitting file history).  Top Brand's patent prosecution expert explained the concept of prosecution disclaimer to the jury.  Appx23955-23956 (152:10-153:11), Appx23961-23962 (158:2-159:9).  Top Brand's design expert testified regarding the file history.  Appx24005-24007 (202:23-204:20).  Top Brand questioned Cozy Comfort's patent prosecution counsel regarding the office action response, establishing White as state of the art.  Appx24197-24201 (160:11-

164:11).  Ngan testified to the alleged similarities between the accused products and the White reference, and the differences from the claimed design.  Appx23673-23676.  In closing, Top Brand argued that the White reference was representative of the art and that Cozy Comfort made narrowing arguments in the file history with respect to the White reference.  Appx25052-25054.

Top Brand also argued in closing that differences distinguished the accused designs from the claimed designs, including the neck opening, pocket size, hemline, and torso shape.  Appx25059-25060.

In finding infringement, the jury rejected these arguments, and there is no basis for finding that the jury would reach a different conclusion based on a narrowing instruction in light of the White reference.  As shown from the comparison in Appellants' Opening Brief, the accused products are significantly closer to the claimed design in overall visual appearance than the White reference.



HD250 Sweatshirt
(cropped and featuring larger pocket)

'788 patent (file history)
(highlighting added; annotations in original)

Opening Br. 39.  While White (center image) depicts a standard hooded sweatshirt, both the accused and claimed designs include features that contribute to their

oversized exaggerated appearance, including a marsupial pocket positioned well above the hemline that does not extend across the whole torso, a wider torso, lower armholes, and a non-upward sloping hemline. Because the White reference was in evidence as part of the state of the art, the jury implicitly found infringement over it. Top Brand has provided no support for the jury reaching a different conclusion in light of a limiting instruction with respect to the White reference. Accordingly, even if the construction was erroneous, the jury verdict should be upheld.

## II.    The District Court Correctly Denied a New Trial

The district court did not abuse its discretion in denying a new trial on obviousness. Cozy Comfort demonstrated over the course of the trial that its novel design was far from obvious to a designer of ordinary skill. Top Brand relied on prior art references that it contended, when combined, rendered the design obvious to a designer of ordinary skill. The jury rejected this obviousness defense.

Having lost on this issue, Top Brand turns to the Federal Circuit's decision in *LKQ*, arguing that it materially altered the legal test for obviousness, thus necessitating a new trial on this defense. The district court's instruction, however, properly apprised the jury of the law regarding obviousness as set forth in *LKQ* and provides no basis to disturb the verdict. Top Brand has not shown that the jury would have reached a different result under a different instruction.

31

**A.    Top Brand cannot meet its high bar to establish that the *LKQ* decision warrants a new trial**

Top Brand's argument that *LKQ* warrants a new trial is effectively a challenge to a jury instruction to which it did not object. Opening Br. 42; Appx25005 (59:17-22). Top Brand erroneously asserts that the *LKQ* decision "alone compels a new trial." Opening Br. 42. A change in the law does not always warrant a new trial. *Hynix Semiconductor Inc. v. Rambus Inc.*, 2009 WL 112834, at *16 (N.D. Cal. Jan. 16, 2009), *aff'd,* 645 F.3d 1336 (Fed. Cir. 2011). A verdict may be set aside only if Top Brand establishes that *LKQ* made the court's instruction legally erroneous and that the error had prejudicial effect. *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004). An error in civil instructions does not require reversal if the error was more probably than not harmless. *Snyder v. Freight, Const., Gen. Drivers, Warehousemen & Helpers, Loc. No. 287*, 175 F.3d 680, 688 n.12 (9th Cir. 1999).

In *Cordis*, this Court affirmed denial of a new trial the appellant sought based on the Supreme Court's decision in *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), which issued after the jury's verdict. 511 F.3d at 1172. Even though the district court's instruction described the teaching-suggestion-motivation test, the Court found that the appellant had not demonstrated that the jury instruction, when read in its entirety, conflicted with the Supreme Court's holding that that teaching-suggestion-motivation test should not be applied rigidly. *Id.* According to the Court,

32

"not only did [appellant] not object to the instruction that it now challenges, [appellant] actually proposed that instruction. The instruction therefore either constitutes 'invited error' that is not reviewable at all, or at most is subject to review under the 'plain error' standard." *Id.*

As in *Cordis*, Top Brand did not object to the jury instruction and, in fact, proposed the obviousness instruction; therefore, its challenge is not reviewable or subject to plain error review. Appx25005; *Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin,* 952 F.3d 1051, 1073 (9th Cir. 2020). "Plain error review applies on direct appeal even where an intervening change in the law is the source of the error." *U.S. v. Christensen*, 828 F.3d 763, 779 (9th Cir. 2015). Even if the instruction is reviewed under the lower review standard, Top Brand cannot show that the instruction was legally erroneous or had a prejudicial effect.

### B.    The instruction was correct under *LKQ*

Top Brand cannot show that the district court erred in its instruction—because it was legally correct. *LKQ* rejected the rigid application of the *Rosen-Durling* test and held that obviousness of a design patent is determined based on application of the *Graham* factors. *LKQ Corp. v. GM Glob. Tech. Operations LLC*, 102 F.4th 1280, 1294-95 (Fed. Cir. 2024).

While the Court rejected the rigidity of the *Rosen-Durling* test, it did not eliminate that test. Instead, the Court explained that, like the pre-*KSR* teaching-

suggestion-motivation test, the *Rosen-Durling* test had "evolved from a useful insight to a rigid rule." *Id.* The *LKQ* decision created a more flexible approach to obviousness.

The district court's instructions, when viewed as a whole, properly accounted for *LKQ*'s more flexible approach. *Sanderson v. Chapman*, 487 F.2d 264, 267 (9th Cir. 1973). While the district court instructed the jury on the primary and secondary reference, it further instructed the jury that the *Graham* factors "must be evaluated," including the "scope and content of the prior art," "difference or differences, if any, between" the claimed design and prior art, the "level of ordinary skill in the art," and secondary considerations of non-obviousness. Appx14571-14573. The district court also instructed the jury, consistent with *LKQ*'s flexible approach, to evaluate "[a]dditional considerations, if any, that indicate that the design was obvious or not obvious." Appx14572.

The *LKQ* decision does not warrant a new trial because the jury was correctly instructed. The instructions included an additional reference to the *Rosen-Durling* requirements, but the district court did not instruct the jury to only consider the *Rosen-Durling* inquiry or to stop if the *Rosen-Durling* inquiry was not met. To the contrary, the district court specifically instructed the jury to apply the *Graham* factors. Thus, the district court instructed the jury to apply the flexible approach consistent with *Graham* and *LKQ*. Indeed, the district court explained its instruction

in its post-trial order, noting how "the jury was instructed to consider seven different factors which included and mirror the four factors from *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966)." Appx14571-14572.

The district court's reasoning mirrors that in *Cordis* in which this Court recognized that the *KSR* decision loosened the standard by abolishing the rigidity of the teaching-suggestion-motivation test. Just as the instruction in *Cordis* did not warrant a new trial in light of the intervening *KSR* decision, the instruction here—to which Top Brand did not object—does not warrant a new trial.

### C.    The substantial evidence supports the jury's validity verdict, and a different instruction would not change the result

To obtain a new trial, Top Brand must show both that the instruction was legally erroneous and that it had prejudicial effect. Top Brand has not shown that the instruction was legally erroneous, but, even if it had, it has made no showing of prejudice. Top Brand has not shown how its expert testimony could have differed to support a finding of obviousness. Nor did Top Brand submit evidence that could support a finding of obviousness.

The facts contradict Top Brand's unsupported assertion that its "validity challenges would have been materially different." Opening Br. 44. Contrary to its arguments, Top Brand did not present its evidence under the *Rosen-Durling* framework. Top Brand's expert, Gamble, testified that she did not apply any particular test "[b]eyond . . . looking at prior art and what a person of ordinary skill

35

in the art would know." Appx24160 (123:6-11). She did not identify a primary reference. Appx24160 (123:19-25). Instead, she focused on whether "[s]omeone with ordinary skill in design and sewing would . . . be able to create this garment," Appx24124 (87:12-13), and testified that certain features were allegedly disclosed in various prior art references. Appx24114 (77:19) ("rounded hood shape"), Appx24117 (80:18) ("taller pocket"), Appx24125 (88:13-14) ("long kind of torso covering the body, long sleeves, and hood structure"), Appx24127 (90:3-17) ("rib knit cuff," "pocket"), Appx24128 (91:11) ("high-low hemline"); Opening Br. 19. Gamble concluded that the claimed design would have been obvious, not based on any particular test, but instead based on the prior art disclosures of similar and common shapes. Appx24124-24125 (87:16-88:2). Accordingly, Gamble did not apply the *Rosen-Durling* framework, which required identification of a primary reference and a so-related secondary reference.

Top Brand's invalidity case fails under both the *Rosen-Durling* and the *LKQ* frameworks. First, by not identifying a primary reference, Top Brand's invalidity case is fatally flawed. "In applying *Graham* factor one, the scope and content of the prior art, a primary reference must be identified." *LKQ*, 102 F.4th at 1298. Cozy Comfort did not somehow "maximize[ ] the prejudice" of this critical omission. Opening Br. 43. Cozy Comfort correctly criticized Gamble for not identifying a primary reference. Appx24160 (123:22-25). Under both *Rosen-Durling* and *LKQ*,

Top Brand was required to identify a primary reference but did not. Appx24160 (123:19-25).

Second, Top Brand's invalidity case is also flawed under *Rosen-Durling* and *LKQ* because it did not identify any motivation to modify a primary reference. *LKQ* holds that "there must be some record-supported reason (without hindsight) that an ordinary designer in the field of the article of manufacture would have modified the primary reference with the feature(s) from the secondary reference(s) to create the same overall appearance as the claimed design." *LKQ*, 102 F. 4th at 1299. Such motivation cannot be shown by an expert's "conclusory references to her belief that one of ordinary skill in the art *could* combine these references, not that they *would* have been motivated to do so." *InTouch Techs., Inc. v. VGO Comm., Inc.*, 751 F.3d 1327, 1352 (Fed. Cir. 2014). Here, Top Brand's expert offered only conclusory statements that the design features *could* be combined. Appx24118 (81:7-13), Appx24119 (82:7-10), Appx24120-24121 (83:23-84:7), Appx24122 (85:14-18), Appx24123 (86:17-25). Indeed, Gamble concluded her obviousness testimony by opining that "[s]omeone with ordinary skill in design and sewing *would certainly be able to* create this garment." Appx24124 (87:5-15) (emphasis added). Such conclusory testimony about what one in the art *could* do is insufficient to establish obviousness under both *Rosen-Durling* and *LKQ*.

Third, Top Brand did not establish that the reference it relied upon most heavily qualified as prior art. Top Brand relied heavily on the "blue sweatshirt" reference. The blue sweatshirt was obtained from counsel's closet and offered into evidence without proof that it qualified as prior art. Appx24156-24158 (119:12-121:19). Top Brand's expert admitted that she could not testify whether the blue sweatshirt "was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public." Appx24158-24159 (121:2-122:7). The jury was entitled to find that the blue sweatshirt was not prior art.

Top Brand could not prove necessary elements in its obviousness case that are required under both the *LKQ* and *Rosen-Durling* frameworks. Accordingly, Top Brand cannot show that it was prejudiced by any alleged error in the jury instruction.

## III.    Substantial Evidence Supported The Jury Verdict On Trademark Infringement

The district court correctly denied Top Brand's JMOL motion because a reasonable jury could find Top Brand Companies infringed Cozy Comfort's trademark. In denying the renewed JMOL motion, the district court correctly explained that "[w]here there is sufficient conflicting evidence, or if reasonable minds could differ over the verdict, JMOL is improper." Appx00002 (quoting *Harper v. City of L.A.*, 533 F.3d 1010, 1021-22 (9th Cir. 2008)).

Top Brand argues that because it did not use "the" before "comfy" when selling competitive goods through identical channels of trade, JMOL should have

38

been granted. Opening Br. 45. This argument misapplies a longstanding precedent in trademark law. As the Supreme Court explained: "It is not necessary to constitute an infringement that every word of a trademark should be appropriated." *Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 33 (1900). This proposition has been widely adopted, and it is commonly recognized that "[e]xact identity is not necessary to generate confusion as to source of similarly-marked products." *Bridgestone Americas Tire Operations, LLC. v. Fed. Corp.*, 673 F.3d 1330, 1337 (Fed. Cir. 2012).

When analyzing likelihood of confusion, "the more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion." *Brookfield Comm.'s, Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999). When evaluating similarity, the Ninth Circuit evaluates three principles. First, "[s]imilarity is best adjudged by appearance, sound, and meaning." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1144 (9th Cir. 2002). Second, the "marks must be considered in their entirety and as they appear in the marketplace." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1206 (9th Cir. 2000). Third, "similarities are weighed more heavily than differences." *Id.*

When properly evaluating marks in their entirety, courts hold that non-identical marks that are similar in terms of sight, sound, and connotation and used on similar goods are likely to cause confusion. For example, the Ninth Circuit

affirmed a finding of a likelihood of confusion between "Perfumebay" and "eBay" marks. *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1176 (9th Cir. 2007). Based on similarity of meaning, PLEDGE for furniture was infringed by defendant's PROMISE trademark for the same product. *S.C. Johnson & Son, Inc. v. Drop Dead Co.*, 210 F. Supp. 816 (S.D. Cal. 1962), *aff'd,* 326 F.2d 87 (9th Cir. 1963). Likewise, X-SEED and XCEED for seeds, were held to be likely to cause confusion given their similarity in sound when spoken. *In re Viterra Inc.*, 671 F.3d 1358, 1367 (Fed. Cir. 2012).

Here, the mark and the accused use are similar in terms of sight, sound, and connotation given they both use COMFY. The similarity continues given that both marks are used in connection with apparel items that are broadly described as "wearable blankets" and directly compete for sales.

Cozy Comfort presented evidence that Top Brands' use of COMFY was infringing Cozy Comfort's mark, THE COMFY—e.g., use of the term on a website selling the competing product (Appx20492, Appx23772-23773 (200:17-201:15)) and comments from confused end users (Appx20469-20477, Appx23788-23789 (216:1-217:10))—that was more than "adequate to support the jury's conclusion" and supports the denial of Top Brand's JMOL. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002).

The evidence also contradicts Top Brand's post-hoc claims of descriptive use. First, Top Brand's "comfy" use was in the drop-down menu of a commercial website advertising products for sale through a revenue-generating Amazon store—not satire, news, comedy, or any objective form of fair use. Its commercial use in a website menu and customer reviews related to online sales. Appx20492, Appx23772-23773 (200:17-201:23), Appx20469-20477, Appx23788-23789 (216:1-217:10).

Additional evidence that Top Brand's use was not descriptive was Ngan filing a trademark application for "Comfy Pajamas," superimposing the applied-for mark onto images of the goods at issue. Appx20167-20187; *see Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1031 (9th Cir. 2024) (filing a trademark application to register a term as a trademark is evidence of use).

Evidence demonstrating Top Brand's use of COMFY as source identifying was Top Brand labeling product drawings sent to manufacturers with the product title "COMFY." Appx16990-16991.

Top Brand's misguided claim it is not infringement if the trademark is modified to remove an article such as "the" is squarely contradicted by the well-known concept that a new entrant has a duty to avoid confusion with an existing well-known trademark. As the Federal Circuit explained, "[t]his court resolves doubts about the likelihood of confusion against the newcomer because the

newcomer has the opportunity and obligation to avoid confusion with existing marks." *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265 (Fed. Cir. 2002); *Nina Ricci, S.A.R.L. v. E.T.F. Enterprises, Inc.*, 889 F.2d 1070, 1074 (Fed. Cir. 1989) ("[W]e must reiterate the teaching of our predecessor court that there is 'no excuse for even approaching the well-known trademark of a competitor . . . .'"). If there is "a close case amounting to a tie, doubts are resolved in favor of the senior user." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1404 n.14 (9th Cir. 1997).

Top Brands' cases do not stand for the proposition that the removal of "the" from a registered trademark permits use of the remaining portion of the trademark to sell competitive goods; nor do they stand for the proposition that a court should take that decision away from a jury on a motion for JMOL. These cases either are distinguishable or favor Cozy Comfort.

In *Alpha Industries*, the Ninth Circuit held that the lower court's decision was supported because of the district court's finding that the two companies were not in the same channel of trade. *Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 445 (9th Cir. 1980). *Alpha* does not speak to whether removing "the" from a registered trademark turns it into an acceptable use; nor does *Alpha* bear on whether a court should grant JMOL and take a factual decision away from a jury when there is evidence of similar products being sold in similar channels.

In *Entrepreneur Media*, the Ninth Circuit remanded for trial on the merits and identified factual issues that a jury, not a court, should consider when evaluating the likelihood of confusion factors. 279 F.3d at 1153. The holding does not stand for the premise that the district court should have granted JMOL but rather that the jury should determine factual issues related to likelihood of confusion. *Id.*

Similarly, *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, does not address the appropriateness of JMOL and instead discusses how a grape-leaf design had become generic in connection with wine, which is unrelated to the wordmark at issue as used in connection with apparel. 150 F.3d 1042, 1048 (9th Cir. 1998). Here, Top Brand is not arguing genericness and ignores the portion of the decision in which the Ninth Circuit ruled that the district court properly let the jury decide the fact issues related to the trade dress claims. *Id.* at 1051. Here too, Cozy Comfort presented evidence that a reasonable jury could rely upon to support a finding of trademark infringement.

As the Ninth Circuit recognized, because of the intensely factual nature of trademark disputes, if the facts present a close question, "it should be answered as a matter of fact by a jury, not as a matter of law by a court." *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1031 (9th Cir. 2010). Here, there were genuine issues of fact that the district court properly let the jury decide and correctly denied Top Brand's motion for JMOL.

## IV.    The District Court Properly Addressed Damages

### A.    Disgorgement is a proper remedy for trademark infringement

Top Brand mischaracterizes the available remedies and the evidentiary showing necessary for a party to obtain them.  Once trademark infringement has been established, a trademark owner is entitled to recover defendant's profits.  15 U.S.C. §1117.  District courts have "broad discretion" in fashioning a remedy for trademark infringement.  *Maier Brewing Co. v. Fleishmann Distilling Corp.*, 390 F.2d 117, 124 (9th Cir. 1968).  Disgorgement is widely recognized as the appropriate measure of damages in a trademark infringement matter.  As *Maier Brewing* explains, "[i]t seems scarcely equitable for an infringer to reap the benefits of a trademark he has stolen, force the registrant to the expense and delay of litigation, and then escape payment of damages."  *Id.* at 123.

In determining the profits to be disgorged, the plaintiff must prove the defendant's gross sales from the infringing activity with reasonable certainty.  15 U.S.C. §1117(a).  Once gross sales are established, they are presumed to be the result of the infringing activity.  *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1408 (9th Cir. 1993).  The burden then shifts to the defendant to prove which, if any, are not attributable to the infringing activity, plus any permissible cost deductions.  15 U.S.C. §1117(a).  If the defendant fails to meet its burden, the court may decline to make any deductions.  *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d

505, 514 (1985) ("If the infringing defendant does not meet its burden of proving costs, the gross figure stands as the defendant's profits.").

**B.     The district court correctly denied JMOL on trademark damages**

Substantial evidence supports the court's denial of JMOL with respect to trademark damages. Top Brand's conduct harmed Cozy Comfort in multiple ways. First, Top Brand stripped away Cozy Comfort's control of its mark and use of its brand name by offering competing products over which Cozy Comfort had no control. *CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F.Supp.2d 1051, 1080 (E.D. Cal. 2009).

Here, the parties are undisputed competitors. Opening Br. 5; Appx24284 (77:2-9). In contrast, in the case cited by Top Brand (*McClaran v. Plastic Indus.*, 97 F.3d 347, 361 (9th Cir. 1996)), the Ninth Circuit found a damage award to be speculative when the trademark owner was not actually selling any products impacted by the infringement.

With respect to harm from unauthorized trademark use, Top Brand's owner, Ngan, testified that when consumers visit his Catalonia and Tirrinia websites and attempt to place an order under "Comfy," the infringing mark, those users are redirected to Amazon and have their orders fulfilled from Amazon—and those sales are included in his Amazon sales receipts. Appx23799 (227:2-11).

Ngan separately confirmed that Exhibit 594 showed a website where people could go to place orders for products including a "comfy" product category. Appx23800-23801 (228:5-229:3).  This is just one example of Top Brand's use that could have reasonably supported a finding that Top Brand's use of "comfy" damaged Cozy Comfort's goodwill (uncontrolled use of its mark) or caused direct financial loss (misdirected sales).

Second, Top Brand's conduct caused actual consumer confusion in the market, creating a wrongful association between Top Brand's products and Cozy Comfort's product when it told consumers that Top Brand's product was "the real brand 'comfy.'"  Appx20469-20477, Appx23788-23789 (216:1-217:10).

Third, Top Brand's conduct harmed Cozy Comfort by misdirecting consumers; after all, Top Brand's use of Cozy Comfort's trademark was tied to millions in sales through Amazon.  "In assessing profits the plaintiff shall be required to prove defendant's sales only."  15 U.S.C. §1117(a).  Given testimony that Top Brand's website used the product category "Wearable Blanket" and the subcategory "comfy," which redirected purchasers to Amazon for fulfillment using Top Brand's product, Cozy Comfort met its burden to prove Top Brand's Amazon sales.  Amazon sales data and summary spreadsheets were admitted into evidence as Exhibits 644 and 832.  Appx23120-23127, Appx25223-25229.  Top Brand made over $60 million

in sales of its wearable blankets since 2018, and as shown from Ngan's testimony, the sales on Amazon included sales attributable to trademark infringement.

Without any record citation, Top Brand's brief calls out the years 2021, 2022, and later, but has no record evidence regarding how those years would be different from the record evidence of Top Brand's use of "comfy." Opening Br. 47-48. The Amazon sales data, combined with Ngan's testimony that Top Brand's website (that used "comfy") redirected to Amazon, gave the jury and the district court substantial evidence upon which to calculate damages. The district court correctly denied JMOL here.

### C. The Court properly allowed the jury to address damages because Top Brand demanded and consented to a jury on all issues

Simply because a party does not have a right to a jury does not mean that a party cannot consent to have a jury decide an issue. Rule 39 states, "[i]n an action not triable of right by a jury, the court, on motion or on its own: (1) may try any issue with an advisory jury; or (2) **may, with the parties' consent, try any issue by a jury whose verdict has the same effect as if a jury trial had been a matter of right** . . . ." Fed. R. Civ. P. 39(c)(1)-(2) (emphasis added).

Initially, Top Brand maintained it wanted a jury trial on all issues. Appx04092-04154. Here, "[t]he parties satisfied the precondition to Rule 39(c)(2) by consenting to have the issue[s] decided by the jury." *Thomas v. Broward Cty. Sheriff's Off.*, 71 F.4th 1305, 1315 (11th Cir. 2023). Here, Top Brand jointly

submitted proposed jury instructions and a verdict form, all seeking a verdict on damages from the jury. Appx12131, Appx25031 (85:1-22). When discussing instructions with the court, Top Brand did not object to the instruction asking the jury to determine total profits. Appx24982 (36:3-14). Furthermore, Top Brand pretrial filings included a proposed verdict form asking the jury to award damages. Appx11496-11497, Appx11499.

That these questions "[were] submitted by the parties evidences their consent." *Thomas*, 71 F.4th at 1315. Critically, "[t]he [Court] adopted all this language for the jury instructions" and verdict form, and Top Brand did not object to their adoption and submission to the jury. *Id.* "[W]hen a district court submits a claim for relief to the jury, that submission 'trigger[s] [Rule] 39(c),' at which point the parties' consent is presumed unless a party objects to that claim, . . . , and neither party objected here." *Id.* (citation omitted). The jury answered in the affirmative and awarded Cozy Comfort damages.

Unless the district court specifies that it is impaneling an advisory jury under Rule 39(c)(1), the default rule is that the Court submitted the issue to the jury pursuant to Rule 39(c)(2), and the jury's verdict is binding. *Thomas*, 71 F.4th at 1314 ("The text of Rule 39(c) confirms that interpretation. . . . It does not allow a district judge to try an issue and then, after the verdict is in, decide whether the jury was advisory or not. The authority of the jury is fixed beforehand.").

Only after the verdict did Top Brand, for the first time, argue that it should not have been given the jury trial it requested. Top Brand never moved for an advisory jury but instead gave its consent to participate in a jury trial on damages. A party cannot wait to see how the jury votes before taking a position on whether its verdict controls. The district court properly denied Top Brand's motion and allowed the verdict to stand. *Hildebrand v. Bd. of Trs. of Mich. St. U.*, 607 F.2d 705, 708-09, 711 (6th Cir. 1979).

### D. Equitable considerations weigh in favor of an award of profits

#### 1. Controlling authority supports the equity of disgorgement

The relief provided by 15 U.S.C. §1117 is "subject to the principles of equity," which generally forbids allowing the infringer to collect a windfall from its ill-gotten profits. "Because 'it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement,' . . . district courts must implement fully" the Lanham Act's statutory requirement allowing the trademark owner to recover profits. *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (citation omitted).

When evaluating disgorgement under the Lanham Act, the Supreme Court held that a finding of willfulness is not required before disgorging profits. *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212 (2020). The Lanham Act explicitly states that plaintiffs "shall be entitled" to a defendant's profits in addition to any

damages sustained.   15 U.S.C. §1117(a).   The Ninth Circuit emphasizes that this provision grants a "wide scope of discretion" in crafting a remedy.   *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 121 (9th Cir. 1968).   A court's "primary function" in exercising that discretion "should center on making any violations of the Lanham Act unprofitable to the infringing party."   *Playboy Enters., Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274 (9th Cir. 1982).

Courts regularly award disgorgement under this anti-profiteering rationale.   *See Monster Energy Co. v. Integrated Supply Network, LLC,* 533 F. Supp. 3d 928, 933 (C.D. Cal. 2021) ("[D]isgorgement of profits would assist in deterring Defendant from continuing to infringe . . . .").   So strong is the Lanham Act's emphasis on deterring unjust enrichment that the Supreme Court has condoned disgorgement where it provides a "windfall to the trade-mark owner" because at least then it would not provide a "windfall to the wrongdoer."   *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 207 (1942).

### 2.    Cozy Comfort carried its burden while Top Brand did not

Cozy Comfort carried its burden by introducing evidence showing Top Brand used "comfy" in connection with its Amazon sales and then introduced evidence summarizing the revenue generated from those sales.   Appx25223-25229, Appx23120-23127.   Cozy Comfort further provided testimony of its damage expert analyzing Top Brand's sales data for the jury to consider.   Appx24841-24843

(101:1-103:6), Appx24847-24871 (107:13-131:6).    Additionally, Top Brand's mental state sufficiently warrants disgorgement of profits it received from its sale of the infringing products because evidence at trial showed that Top Brand continued to sell the infringing products long after it became aware of Cozy Comfort's trademark rights. *See Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993) ("Willfulness and bad faith 'require a connection between a defendant's awareness of its competitors and its actions at those competitors' expense.'").

Given this evidence, the burden then shifted to Top Brand to provide its cost and any allocation or explanation of these profits.  Here, Top Brand failed.  It did not call its own damage expert, and its owner gave contradictory and objectively false trial testimony about his and his companies' finances. *See, e.g.,* Appx23871-23873 (68:17-70:12) ("Q. Well, you transfer millions of dollars personally between yourself and Flying Star, do you not? A. No."), Appx23873-23878 (70:13-75:3), Appx23876 (73:10-13) ("Q. And on the next page, it also shows a transfer of this time $1 million, and it's a transfer from you personally; is that correct? A. Yes."), Appx22574-22637.

On apportionment, disgorgement of profits "is intended to award profits only on sales that are attributable to the infringing conduct." *Lindy Pen*, 982 F.2d at 1408. However, "[o]nce the plaintiff demonstrates gross profits, they are presumed to be

the result of the infringing activity." *Id.*  It is then defendant's burden to demonstrate which of its total sales are not attributable to the infringing activity.  *Id.*  District courts should not apportion profits where they cannot do so based on a "reasonable, nonspeculative formula." *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505, 519 (9th Cir. 1985).  When infringing and noninfringing elements of the work cannot be readily separated, then it is appropriate to award net profits to plaintiff.  *See Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994).

### E.    It was appropriate to disgorge profits for design-patent infringement

Top Brand's attempt to reduce the disgorged profits award is not supported by statute or the record.  The damages award is supported by a preponderance of the evidence, and any purported error reflects Top Brand's evidentiary failures.

Section 289, the design patent damages statute, is silent to the type of profit to be awarded.  35 U.S.C. §289.  As the Supreme Court explained, "[s]ection 289 allows a patent holder to recover the total profit an infringer makes from the infringement." *Samsung Elecs. Co., Ltd. v. Apple Inc.*, 580 U.S. 53, 58 (2016).  The statute does not differentiate between gross and net profits but "requires the disgorgement of the infringers' profits to the patent holder, such that the infringers retain no profit from their wrong." *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1448 (Fed. Cir. 1998).

Assuming for the sake of argument that the statute requires net profits, the record establishes that the jury's verdict was an accounting of net profits. Consistent with the holding in *Samsung*, the district court instructed the jury to "award Cozy Comfort with Plaintiffs' total profits attributable to the infringement." Appx14574. The district court explained that "[p]rofit is determined by deducting certain expenses from gross revenue." Appx14574. It explained that Cozy Comfort has the burden of proving Top Brand's gross revenue. Appx14574. And it explained what expenses are deductible and that Top Brand has the burden of proving deductible expenses. Appx14574.

Nothing in the record supports that the jury did not follow these instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions."). Cozy Comfort's expert, Cook, testified that the revenue for infringement of the design patents was approximately $62.8M. Appx24848 (108:1-15). That is all Cozy Comfort needed to prove. It was then Top Brand's burden to prove deductions, but it was unable to do so. Cook, who reviewed Top Brand's financials, could not find support for many claimed expenses or costs. Appx24855-24856 (115:9-116:20). Indeed, Cook testified that Plaintiffs failed to produce normal accounting documentation, like invoices or purchase orders, to show that many of the claimed deductions or expenses actually occurred. Appx24855-24856 (115:9-116:20). Ultimately, Cook testified that, because of Plaintiffs production

failures, all he could verify was an approximate profit margin of twenty-five percent. Appx24856 (116:12-16).

The jury apparently agreed with Cook. Having not been presented with any invoices, purchase orders, or other documents supporting any of the expenses and costs that Top Brand wants deducted, the jury based its verdict on that profit margin. To the extent the award could be considered gross profits, it is because of Top Brand's failure to prove its deductions. Top Brand's "windfall" argument ignores its own evidentiary shortcomings.

Contrary to Top Brand's claim that Cozy Comfort's expert testimony was conclusory, Cook's testimony was supported by a preponderance of the evidence. Cook testified that he relied on Top Brand's annual summaries from 2018-2024 that purported to show its sales revenue, the costs incurred from making those sales, gross profit, and net profit. Appx24842 (102:5-20). He prepared summary charts of this information. Appx24842 (102:5-20). This evidence is part of the record. Appx23120-23127, Appx25223-25229.

## F.    The trademark infringement award was not a double recovery

The trademark-infringement award was not a double recovery. First, the patent did not issue until September of 2019, so the sales from 2018 and the first three quarters of 2019 were not included in the patent damages. During that period,

Top Brand Companies had revenues over $6.2 Million in wearable blankets across the HD100, HD200, HD201, and HD210 lines.  Appx23120-23127.

Second, the Amazon sales summaries included four other lines of wearable blankets that were not accused of patent infringement, the HD130, HD220, HD230, and HD300.  As shown in Exhibit 644, these four lines had sales revenues of over $3.5 million in 2020 and 2021.  Ultimately, the Amazon summaries presented at trial showed almost $10.5 million in revenue from the sale of wearable blankets that do not overlap with profits associated with the patent infringement allegations. Appx23120-23127; Appx25223-25229.

## V.     Substantial Evidence Supported the Jury Verdict On Alter Ego

The district court correctly denied the JMOL motion on alter ego because there was abundant evidence from which a reasonable jury could find that the Top Brand Companies were, in fact, alter egos of Ngan.  In Arizona, alter ego liability requires proof of (1) unity of control and (2) that observance of the corporate form would sanction a fraud or promote injustice.  *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991); *Keg Rests. Ariz., Inc. v. Jones*, 375 P.3d 1173, 1182 (Ariz. Ct. App. 2016).  Both elements were well-supported by the evidence.

### A.     There was significant evidence that there was a unity of control among the Top Brand Companies and Ngan

Unity of control means "such a unity of interest and ownership that the personalities of the corporation and the owners cease to exist."  *Bischofshausen,*

*Vasbinder & Luckie v. D.W. Jaquays Min. & Equip. Contrs. Co.*, 700 P.2d 902, 906-07 (Ariz. Ct. App. 1985). Arizona courts have identified several factors that <u>may</u> be considered: stock ownership by the parent; common officers or directors; under-capitalization; failure to maintain a separate corporate identity; diversion of corporate property for personal use; lack of corporate formalities; and failure to maintain books and records of account in reasonable order. *Keybank N.A. v. Neumann Dermatology LLC*, 2022 WL 16635372, at *3 (D. Ariz. 2022). These factors are <u>not</u> exhaustive, and they are not mechanically applied to the facts. *Id., at* *4 ("[T]he factors that Defendants list are but several of numerous factors for the Court to consider, not essential elements of Plaintiff's claim."). Indeed, the Alter Ego jury instruction (correctly) explained that this analysis is "highly fact-based" and "requires considering the totality of the circumstances."[3] Appx14551.

The Top Brand Companies offer a highly selective presentation of the record and an erroneously formulaic analysis of this issue. First, there was substantial evidence that there was a "unity of control." For example, Ngan owned and controlled all three Top Brand Companies.[4] Appx23783-23784 (211:25-212:10). He is the final decision-maker, deciding what products to sell (including the

---

[3] The Top Brand Companies did not challenge the Alter Ego jury instruction.

[4] Although Ngan's wife was a minority owner, she had no role in these businesses. Appx23692-23693 (120:23-121:4).

infringing products) and not to sell. Appx23824-23826 (21:24-23:20). He did not regularly hold board meetings for Top Brand, E-Star, or Flying Star.[5] Appx23849 (46:17-24).

Furthermore, although the Top Brand Companies transacted business with one another, no written agreements memorialized these relationships—only "verbal" agreements between Ngan *and himself*. Appx23850 (47:9-19). As Ngan explained, "*I'm the owner, so I don't need to have any agreement.* And . . . three company is just running as Amazon required, but actually it's only one company." Appx23850 (47:17-19) (emphasis added). Similarly, although Ngan sold infringing products through Walmart.com, *none* of the Top Brand Companies had a contractual relationship with Walmart or ever *directly* sold any products on that website. Appx23789-23793 (217:11-221:24). Instead, the only entity that had a contract with Walmart was H&C Headwear, another Ngan-owned company. Appx23793-23794 (221:25-222:3). But H&C Headwear had *no contractual relationship* with Flying Star or the other Top Brand Companies. Appx23794-23796 (222:18-224:21).

This evidence is more persuasive than what is noted in the Opening Brief— that these businesses were "legally formed in 2017" and "remain[ ] in good standing" in their states of incorporation. Opening Br. 64. These facts are irrelevant

---

[5] Ngan's failure to hold meetings is not surprising. He owns so many corporations that he could not list them all. Appx23783-23786 (211:25-214:4).

because they shed no light on **how** Ngan and these companies operated.  The evidence established that Ngan acted as if he and his corporations were interchangeable—i.e., as if the "separate personalities" ceased to exist.

The financial practices tell a similar story.  The Opening Brief implausibly suggests that these entities scrupulously honored the corporate form.  Opening Br. 63-65.  Although the companies did file separate tax returns, that alone cannot defeat alter ego liability.  Moreover, those returns and other evidence established that (i) these businesses were **not** kept completely separate from each other and Ngan; (ii) Ngan drained the profits from them, diverting those monies to entities he owned and/or controlled; and (iii) he took these steps at the same time he filed this lawsuit:

Commingled Books/Records

- Ngan admitted that the companies did not maintain separate general ledgers; there was one general ledger that tracked the combined costs of the Top Brand Companies and Sky Creations.  Appx23849-23850 (46:25-47:8).

- Ngan admitted that the companies shared "a lot" of overhead expenses including rent, utilities, office space, and warehouse space.  Appx23833 (30:6-17).  He dictated how those costs were allocated across the companies and claimed that the allocation was based on percentage of

sales.  Appx23827-23828 (24:10-25:8).  But these allocations were artificial.  Cook, Cozy Comfort's expert, testified that they were only "estimates" and were "poorly supported".  Appx24858-24861 (118:22-121:13).  Cook opined that these estimates were "not direct costs that go with a sale" and gave "no indication how any of these expenses contributed to the production, distribution, or sale of the accused products."  Appx24858-24861 (118:22-121:24), Appx24866 (126:1-25).

- Cook testified that he could not verify the sales revenue, costs allegedly incurred, or profits purportedly made by the Top Brand Companies. Appx24842-24843 (102:5-103:4), Appx24850-24856 (110:1-116:16). Ngan's financial management gave an "appearance of trying to hide or obfuscate, potentially misstate or understate, the true financial results."[6] Appx24847 (107:13-25).

Self-Dealing

- The general ledger reflected substantial expenses—rent, travel expenses, and a "management fee"— paid to Ngan Brothers, an entity

---

[6] Cook's testimony was unrebutted; the Top Brand Companies presented no expert testimony on these issues.

controlled by a trust Ngan set up for his children. Appx23833-23834 (30:21-31:9), Appx24860-24864 (120:5-124:19).

- Rent: Ngan Brothers owned the warehouse the companies used. Appx23833 (30:6-20). Curiously, the rent ***doubled*** in 2020 (when Top Brand Companies filed this lawsuit) and increased retroactively for the whole year. Appx24865 (125:3-12). From 2019-2021, the Top Brand Companies paid $1.9 million in rent. Appx24863-24864 (123:19-124:6). Cook testified that there was no written lease. Appx24864 (124:20-21).

- Management fee: Cook testified that this fee started in February 2020 (when Top Brand Companies filed this lawsuit). Appx24865 (125:3-8). In 2020 and 2021 alone, Ngan Brothers received $353,000 in management fees. Appx24864 (124:7-11). Cook testified that there was no contract covering management fees. Appx24864 (124:22-24). The management fees and rent reduced the companies' income to almost zero in 2020 and 2021.[7] Appx24865 (125:3-22).

---

[7] E-Star's and Top Brand's tax returns for 2018-21 also reflected payment of large annual management fees—to Flying Star. Appx18130-18167, Appx18168-18208, Appx22671-22728. These fees increased dramatically as the revenues for these

- When Flying Star had "no money" during the "high season" for product sales, Ngan drew on a bank line of credit (issued to Ngan Brothers) to get Flying Star cash. Appx23871-23872 (68:25-69:17).

- Ngan described the Top Brand Companies' profits as "all mine". Appx23826-23827 (23:21-24:9).

Undercapitalization

- E-Star filed tax returns in 2018, 2019, 2020, and 2021 reflecting ***de minimis or no assets*** despite reporting over $2.4 million in total income in 2018, $8 million in 2019, $12 million in 2020, and $17 million in 2021. Appx23864-23866 (61:2-63:19), Appx18130-18167.

- Top Brand also filed tax returns from 2018-2021 reflecting ***de minimis or no assets*** despite reporting millions in income each year. Appx23866-23868 (63:20-65:4), Appx18168-18208.

This evidence painted a compelling picture that Ngan abused the corporate form, conflating his personal interests with that of the Top Brand Companies. Ngan's insistence to the contrary at trial undercut by his lack of credibility on this issue. He denied that he made transfers from Flying Star to H&C Headwear.

---

entities grew. Appx18168-18208. In each year, these management fees, plus other expenses, exactly equaled the total income that each entity realized, reducing the taxable income to zero. Appx18130-18167, Appx18168-18208, Appx22671-22728.

Appx23873 (70:4-12). He relented after being confronted with bank statements reflecting large transfers to H&C Headwear (and Ngan Brothers). Appx23874-23878 (71:5-75:1), Appx22574-22637. Ngan also denied that there were transfers between himself and the Top Brand Companies. Appx23873 (70:10-12), Appx23876 (73:10-17). Again, he relented after being shown that he had transferred $1 million into Flying Star. Appx22593. The jury was entitled to assess Ngan's credibility and apply that perspective to his other testimony. Appx14546. Such determinations are the "exclusive function of the jury," *SEC v. Jensen*, 835 F.3d 1100, 1108 (9th Cir. 2016), and an appellate court "may not assess the credibility of witnesses in determining whether substantial evidence exists to support the jury's verdict." *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999).

Under Arizona law, there was more than "sufficient" evidence to support the first alter ego factor. For example, in *Keybank N.A. v. Neumann Dermatology LLC*, the district court considered cross-motions for summary judgment on alter ego liability and granted summary judgment to the party seeking to impose alter ego liability on the first factor. 2022 WL 16635372 at *2-4. The court noted that the individual (Neumann) was the sole decision-maker for the corporate entity (ND) and that the flow of money through ND "gives lie to ND's corporate independence." *Id.* As soon as it became clear that ND would have substantial monetary obligations, Neumann diverted money from ND. *Id.* That is what happened here; the Top Brand

Companies began paying a management fee and double rent to Ngan Brothers at the same time this lawsuit was filed.

Likewise, in *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991), the Arizona Supreme Court reversed a trial court's grant of summary judgment on alter ego, pointing out that the parent had exercised "substantially total control over the management and activities" of the subsidiary, including evidence that the parent "performed virtually every service necessary for" the subsidiary's operation—e.g., billing and specific and general accounting functions. *Id.* There was "ample evidence" from which a jury could conclude that "unity of control" existed. *Id.* at 729. Here, Ngan controlled all of the Top Brand Companies, and those entities all paid rent and fees to another Ngan-controlled entity.

Finally, in *Youngren v. Rezzonico*, 543 P.2d 142 (Ariz. Ct. App. 1975), the Arizona Court of Appeals affirmed a jury verdict that pierced the corporate veil as to the sole stockholder of a corporation. The *Youngren* court found the evidence "conflicting" but nevertheless upheld the verdict: "From time to time, Youngren put personal funds into the corporation and withdrew corporate funds for personal use." *Id.* at 146. The corporation also never issued notes for monies loaned to the corporation. *Id.* That is how Ngan operated the Top Brand Companies—putting some of his own money into the corporation but draining all three entities of profits

through ever-increasing rent and management fees, paid to an entity (Ngan Brothers) that he controlled.

The cases cited in the Opening Brief do not dictate a different result. In *Deutsche Credit Corp. v. Case Power & Equip. Co.*, 876 P.2d 1190, 1195-97 (Ariz. Ct. App. 1994), the court affirmed summary judgment where the only evidence presented in support of alter ego was that two corporate entities shared common officers and directors. But, Cozy Comfort is <u>not</u> relying solely on such evidence here. And in *Ize Nantan Bagowa, Ltd. v. Scalia*, 577 P.2d 725, 729 (Ariz. Ct. App. 1978), the court agreed that undercapitalization, "where it is clearly shown, is an important factor in determining whether the doctrine of alter ego should be applied," but that "[u]ndercapitalization [could not] be proved merely by showing that the corporation is now insolvent." Here, however, Cozy Comfort demonstrated that funds—in the form of management fees and exorbitant rent—were transferred out of the Top Brand Companies on a regular basis.

Equally unhelpful is *Mid America Title Co. v. Transnation Title Ins. Co.*, 332 F.3d 494 (7th Cir. 2003). *Mid America Title* involved an atypical veil-piercing fact pattern, in which a title insurance agent (Mid America) sought to impose contractual liability (breach of an exclusivity clause) on a title insurance underwriter

(Transnation) based on the acts of Transnation's corporate affiliates.[8]  *Id.* at 495.
The court concluded that there was no evidence that the affiliates on whom the
plaintiff sought to impose alter ego liability had been "formed to siphon off"
Transnation's (and therefore Mid America's) business.  *Id.* at 496.  Here, the
evidence demonstrated that the Top Brand Companies paid a dubious "management
fee," the obvious purpose of which was to drain these entities of cash.

###    B.    Piercing the corporate veil was necessary to avoid an injustice

Cozy Comfort is not required to establish the elements of "fraud" to hold Ngan
liable for the acts of the Top Brand Companies.  "Arizona courts consider 'injustice'
as an alternative to 'fraud' for the purposes of establishing the second element of
alter ego liability." *Keybank*, 2022 WL 16635372, at *5.  "A fraud or injustice arises
if observance of the corporate form would confuse the opposing parties and frustrate
their efforts to protect their rights, while allowing the party responsible to evade
liability." *Keg Rests.*, 375 P.3d at 1184.  Here, in the same month that this lawsuit
was filed, Ngan took steps to divert profits out of the companies and into his separate
entity, Ngan Brothers.  Appx24863-24865 (123:19-125:22).  In particular, Ngan
nearly doubled the rent and began paying Ngan Brothers a management fee.

---

[8] In fact, Mid-America itself "insist[ed] that this case is 'not about' veil-piercing";
however, the court reasoned that there was "no other explanation how the acts of one
corporate entity might be deemed a breach of contract by a separate entity."  332
F.3d at 497.

Appx24865 (125:3-22). The jury reasonably could have concluded that Ngan took these steps in anticipation of potential legal exposure for his infringing activities. That is precisely the type of conduct that courts (and juries) have found creates injustice.

For example, in *Youngren*, the Arizona Court of Appeals affirmed a veil-piercing verdict where the court reasoned that the jury "could also have found that it would amount to an injustice or unjust act to allow" the sole stockholder in the company "to escape payment of the note by hiding behind the corporate entity." 543 P.2d at 146. At the time the debt was incurred by the company, the stockholder knew that the company was "in a bad financial condition and was unable to pay the purchase price". *Id.* That reasoning is applicable here. The jury found that Ngan made and sold infringing products *and* that the infringement was willful. Appx25214 (8:22-9:21). Ngan made those intentionally infringing sales through a series of corporate entities that he owned—entities that he knew were (and caused to be) undercapitalized. The jury reasonably could have concluded that it would be unjust to allow Ngan to hide behind his corporate entities and avoid financial responsibilities for his misconduct.

Similarly, in *Gatecliff*, the Arizona Supreme Court ruled that the "interrelationship" between two corporations may "promote fraud *or injustice*" and thereby satisfy the second part of the alter ego test. 821 P.2d at 729. "Observance

66

of the corporate form . . . could deny plaintiffs recovery from the party responsible for cancelling their insurance policy." *Id.* That reasoning applies here, where the Top Brand Companies are, nominally, the parties who infringed Cozy Comfort's patents and trademarks, but Ngan was the architect of every action these entities took. Ngan is **the** person responsible for committing these wrongful acts, and it would be unjust to deny Cozy Comfort recovery from that party. *See Keg Rests.*, 375 P.3d at 1184 ("Certainly the brain that so competently and thoroughly directs the entire enterprise must be liable for the acts of its appendages.") (citation omitted).

## CONCLUSION

For these reasons, the district court's judgment should be affirmed.

Respectfully submitted,

/s/ *Johanna M. Wilbert*
Johanna M. Wilbert
Christian G. Stahl
Michael Piery
QUARLES & BRADY LLP
411 E. Wisconsin Ave., Suite 2400
Milwaukee, WI 53202
(414) 277-5000 (telephone)
(414) 271-3552 (facsimile)
Email: johanna.wilbert@quarles.com
Email: christian.stahl@quarles.com
Email: michael.piery@quarles.com

*Counsel for Appellees Cozy Comfort Company LLC, Brian Speciale, Michael Speciale*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:**  2024-2191

**Short Case Caption:**  Top Brand LLC v. Cozy Comfort Company LLC

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes  13,993  words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 12/19/2024

Signature:  /s/ Johanna M. Wilbert

Name:  Johanna M. Wilbert