No. 2024-2191

# United States Court of Appeals for the Federal Circuit

TOP BRAND LLC, SKY CREATIONS LLC, E STAR LLC, FLYING STAR LLC,

*Plaintiff/Counter-Defendants-Appellant*,

JOHN NGAN,

*Counter-Defendant/Counter-Claimant-Appellant*

v.

COZY COMFORT COMPANY LLC,

*Defendant/Counter-Claimant-Appellee,*

BRIAN SPECIALE, MICHAEL SPECIALE,

*Defendants/Counter-Defendants-Appellees.*

**Appeal from the United States District Court for the District of Arizona in No. 2:21-cv-00597-SPL, Judge Steven P. Logan**

## REPLY BRIEF FOR APPELLANTS

Gregory A. Castanias
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939

John C. Evans
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939

*Counsel for Appellants Top Brand LLC, Sky Creations LLC, E Star LLC, Flying Star LLC, and John Ngan*
*[Additional counsel on inside cover]*

Marlee R. Hartenstein
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219
(412) 391-3939

Eric M. Fraser
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2000
Phoenix, AZ 85012
(602) 640-9000

## <u>CERTIFICATE OF INTEREST</u>

**Case Number:** 2024-2191

**Short Case Caption:** *Top Brand LLC v. Cozy Comfort Company LLC*

**Filing Party/Entity:** Top Brand LLC, Sky Creations LLC, E Star LLC, Flying Star LLC, John Ngan

I certify the following information and any attached sheets is accurate and complete to the best of my knowledge.

Date: December 31, 2024        Signature:   <u>/s/ *Gregory A. Castanias*     </u>
                                            Gregory A. Castanias

1. **Represented Entities:** Provide the full names of all entities represented by undersigned counsel in this case.  Fed. Cir. R. 47.4(a)(1).

    Top Brand LLC;
    Sky Creations LLC;
    E Star LLC;
    Flying Star LLC; and
    John Ngan

2. **Real Party in Interest.** Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.  Fed. Cir. R. 47.4(a)(2).

    None.

3. **Parent Corporations and Stockholders.**  Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  Fed. Cir. R. 47.4(a)(3).

    None.

4. **Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

    Aronberg Goldgehn Davis & Garmisa
    Christopher W. Niro

Matthew L. De Preter
William L. Niro
Phillip W. Londen

5. **Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

*Cozy Comfort Company LLC v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A to the Complaint*, No. 1:23-cv-16563 (N.D. Ill.)

*Cozy Comfort Company LLC v. Larger Than Average LLC, et al.*, No. 2:24-cv-00185 (D. Ariz) (transferred to W.D. Mo. June 12, 2024, but not yet docketed there)

*Cozy Comfort Company LLC v. ABC Company dba Blanket Hoodies*, No. 2:24-cv-00184 (D. Ariz.)

6. **Organizational Victims and Bankruptcy Cases.**  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

None/Not Applicable.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF ABBREVIATIONS ...........................................................ix

INTRODUCTION ...................................................................................1

ARGUMENT ..........................................................................................2

I.    THE COURT SHOULD ORDER JUDGMENT OF
NONINFRINGEMENT OF THE '788 PATENT ............................2

    A.    Cozy Comfort's Waiver Arguments Fail...................................2

    B.    Top Brand Is Entitled To JMOL.................................................5

II.    TOP BRAND IS AT MINIMUM ENTITLED TO A NEW
TRIAL IN VIEW OF LKQ AND COZY COMFORT'S
LETHAL UTILIZATION OF ROSEN-DURLING AT TRIAL .......12

III.    THE COURT SHOULD ORDER JUDGMENT OF NO
TRADEMARK INFRINGEMENT ..................................................15

IV.    IF THE JUDGMENT IS NOT REVERSED OUTRIGHT, THE
COURT SHOULD REMAND FOR THE DISTRICT COURT
TO DETERMINE DISGORGEMENT .............................................19

    A.    Disgorgement Was the District Court's Job ............................19

    B.    Equity Favors Eliminating or Reducing Any
Disgorgement Remedies ..........................................................22

V.    THE COURT SHOULD ORDER JUDGMENT THAT JOHN
NGAN IS NOT AN ALTER EGO OF THE CORPORATE
DEFENDANTS ...............................................................................26

CONCLUSION .....................................................................................31

CERTIFICATE OF COMPLIANCE .....................................................33

# TABLE OF AUTHORITIES

**Page**

CASES

*Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*,
466 F.3d 1000 (Fed. Cir. 2006) ........................................................25

*Amgen Inc. v. Coherus BioSciences Inc.*,
931 F.3d 1154 (Fed. Cir. 2019) ..........................................................8

*Bio-Rad Laboratories, Inc. v. Nicolet Instrument Corp.*,
807 F.2d 964 (Fed. Cir. 1986) ..........................................................14

*Brown v. AVEMCO Inv. Corp.*,
603 F.2d 1367 (9th Cir. 1979) ............................................................4

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
381 F.3d 1371 (Fed. Cir. 2004) ..........................................................4

*Chapman v. Field*,
602 P.2d 481 (Ariz. 1979) ..........................................27, 28, 29, 30

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*,
No. 17-cv-01781, 2024 WL 4643096 (S.D. Cal. Oct. 30, 2024) ......................13

*Cozy Comfort Co. LLC v. Individuals, et al. Identified on Schedule A to Complaint*,
No. 23-CV-16563, 2024 WL 2722625 (N.D. Ill. May 28, 2024) .................7, 13

*Dietel v. Day*,
492 P.2d 455 (Ariz. Ct. App. 1972)...................................................29

*Durling v. Spectrum Furniture Co.*,
101 F.3d 100 (1996)...............................................1, 12, 13, 14, 15

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008) (en banc) ....................................4, 5, 7

## TABLE OF AUTHORITIES
(continued)

Page

*Elmer v. ICC Fabricating, Inc.*,
  67 F.3d 1571 (Fed. Cir. 1995) .................................................................9

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
  535 U.S. 722 (2002).................................................................................5

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) .............................................................3

*Graham v. John Deere Co. of Kansas City*,
  383 U.S. 1 (1966)...................................................................................14

*Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*,
  28 F.4th 35 (9th Cir. 2022) .............................................................22, 24

*Harris Corp. v. Ericsson Inc.*,
  417 F.3d 1241 (Fed. Cir. 2005) .............................................................3

*Hartco Eng'g, Inc. v. Wang's Int'l, Inc.*,
  142 F. App'x 455 (Fed. Cir. 2005) .........................................................9

*In re Rosen*,
  673 F.2d 388 (CCPA 1982). ......................................1, 12, 13, 14, 15

*In re Viterra Inc.*,
  671 F.3d 1358 (Fed. Cir. 2012) ...........................................................17

*Japan Telecom, Inc. v. Japan Telecom Am., Inc.*,
  287 F.3d 866 (9th Cir. 2002) ...............................................................18

*KSR Int'l Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007)...............................................................................13

*Lindy Pen Co. v. Bic Pen Corp.*,
  982 F.2d 1400 (9th Cir. 1993) ...............................................................24

## TABLE OF AUTHORITIES

(continued)

Page

*Liu v. SEC*,
    591 U.S. 71 (2020)..................................................................................23

*LKQ Corp. v. GM Glob. Tech. Operations LLC*,
    102 F.4th 1280 (Fed. Cir. 2024) (en banc) ...................1, 12, 13, 14, 15

*LKQ Corp. v. GM Glob. Tech. Operations LLC*,
    71 F.4th 1383 (Fed. Cir. 2023) (en banc) .........................................13

*Markman v. Westview Instruments, Inc.*,
    52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)...............3, 5

*McClaran v. Plastic Indus., Inc.*,
    97 F.3d 347 (9th Cir. 1996) ................................................................24

*Mid Am. Title Co. v. Transnation Title Ins. Co.*,
    332 F.3d 494 (7th Cir. 2003) ..............................................................28

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*,
    303 F.3d 1294 (Fed. Cir. 2002) ...........................................................4

*NIKE, Inc. v. Skechers U.S.A., Inc.*,
    No. LA-CV17-08509, 2020 WL 10486482 (C.D. Cal. Oct. 26, 2020)..............10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) .......................................................4, 5

*OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*,
    897 F.3d 1008 (9th Cir. 2018) .............................................................3

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
    739 F.3d 694 (Fed. Cir. 2014) ...................................................5, 9, 10

*Perfumebay.com Inc. v. eBay, Inc.*,
    506 F.3d 1165 (9th Cir. 2007) ......................................................16, 18

## TABLE OF AUTHORITIES
(continued)

Page

*Pharma Tech Sols., Inc. v. LifeScan, Inc.*,
942 F.3d 1372 (Fed. Cir. 2019) ..................................................10, 11

*Phillips v. Cameron Tool Corp.*,
950 F.2d 488 (7th Cir. 1991) ................................................14

*PODS, Inc. v. Porta Stor, Inc.*,
484 F.3d 1359 (Fed. Cir. 2007) ..........................................8

*Precor Inc. v. Life Fitness*,
13 F. App'x 913 (Fed. Cir. 2001) .......................................9

*Punchbowl, Inc. v. AJ Press, LLC*,
90 F.4th 1022 (9th Cir. 2024) ...........................................18

*Robinson v. Heilman*,
563 F.2d 1304 (9th Cir. 1977) ...........................................14

*S.C. Johnson & Son, Inc. v. Drop Dead Co.*,
210 F. Supp. 816 (S.D. Cal. 1962).................................16, 17

*SEC v. Blatt*,
583 F.2d 1325 (5th Cir. 1978) ..........................................23

*Tex. Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*,
895 F.3d 1304 (Fed. Cir. 2018) .................................1, 19, 20, 21, 22

*Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*,
15 F.4th 1136 (Fed. Cir. 2021) ..........................................8

*Voltstar Techs., Inc. v. Amazon.com, Inc.*,
No. 13-C-5570, 2014 WL 3725860 (N.D. Ill. July 28, 2014), *aff'd*,
599 F. App'x 385 (Fed. Cir. 2015) ..................................11

*Wing Shing Prods. (BVI) Co. v. Sunbeam Prods., Inc.*,
665 F. Supp. 2d 357 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 956 (Fed.
Cir. 2010) ........................................................11

## TABLE OF AUTHORITIES
(continued)

Page

**STATUTES**

26 U.S.C. § 1501 ................................................................30

35 U.S.C. § 289 .................................................................22

**RULES**

Fed. R. Civ. P. 39 ........................................................20, 21, 22

Fed. R. Civ. P. 50 ...........................................................2, 3, 4

Fed. R. Civ. P. 52 .........................................................1, 20, 23

Fed. R. Civ. P. 59 ...............................................................14

Fed. R. Civ. P. 60 ...............................................................13

## <u>TABLE OF ABBREVIATIONS</u>

In addition to the abbreviations used in Top Brand's opening brief
(TBBr.xiv), the following abbreviations appear in this brief.

Emphasis throughout the brief is added unless otherwise noted.

| Abbreviation | Term |
|---|---|
| TBBr.__ | Top Brand's opening brief (ECF No. 13) |
| CCBr.__ | Corrected Response Brief for Appellees Cozy Comfort Company LLC, Brian Speciale, Michael Speciale (ECF No. 21) |

## **INTRODUCTION**

There is much to say about Cozy Comfort's brief.  Most significant is what Cozy Comfort does not say.  It ignores—

(1)    Its own clear disavowals of claim scope (Appx15105–15111);

(2)    This Court's "elimination of the rigid *Rosen-Durling* test" in *LKQ Corp. v. GM Glob. Tech. Operations LLC*, 102 F.4th 1280, 1301 (Fed. Cir. 2024) (en banc)—Cozy Comfort astonishingly claims *LKQ* "did not eliminate that test" at all (CCBr.33);

(3)    The total absence of evidence that Top Brand used the registered trademark THE COMFY;

(4)    This Court's decision in *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas Electronics America, Inc.*, 895 F.3d 1304, 1319 (Fed. Cir. 2018), which holds that because disgorgement is equitable and not historically juriable at common law, a party like Top Brand "is entitled to a decision on disgorgement by the trial court, with findings of fact and conclusions of law duly entered in accordance with Rule 52"; and

(5)    This requirement of Arizona law, set out in the agreed alter-ego instruction:  "In order to pierce the corporate veil and hold an individual liable for a company's actions, there needs to be proof that the shareholder disregarded the corporate entity and made it an instrument to conduct his own personal affairs."  Appx14551.

Each point is case-dispositive on its respective issue.  Yet, Cozy Comfort adopts an ostrich strategy—burying its head in the sand, hoping no one will notice its lack of response.  This Court should notice:  Cozy Comfort's silence shouts loudly about the proper outcome here.

The Court should reverse.

**ARGUMENT**

## I.    THE COURT SHOULD ORDER JUDGMENT OF NONINFRINGEMENT OF THE '788 PATENT

Cozy Comfort obtained the '788 patent by representing that its single claim was limited to a sweatshirt having a distinctly narrow pocket size and location, and a backward-sloping hemline.  These clear statements of claim scope drew "significant" distinctions from prior art (Appx15109) and induced allowance. Appx15088.  In making these representations, Cozy Comfort surrendered significant claim scope—but the jury was never so instructed despite Top Brand's repeated requests for construction.  The accused products are within the scope surrendered, so the Court should order judgment of noninfringement.

### A.    Cozy Comfort's Waiver Arguments Fail.  Cozy Comfort claims that Top Brand waived its claim-construction and noninfringement arguments. CCBr.22–24.  This is incorrect.

To start, Top Brand properly framed its noninfringement argument in its Rule 50(a) motion (Appx25147 (4:10–15)), renewing it post-verdict under Rule 50(b), noting:  "At this stage, this Court now has an obligation to resolve this dispute of claim scope as a matter of law," and that Top Brand did not infringe under the correct claim scope.  Appx14814.  Cozy Comfort claims waiver in that "Top Brand did not raise claim construction in its Rule 50(a) motion" (CCBr.24), but that was both inappropriate and unnecessary:  Claim construction is a legal

- 2 -

question, and Top Brand repeatedly made clear its position on that issue. *See* TBBr.13–15. By trial, Rule 50 served to test the evidentiary sufficiency of the non-movant's case against "the correct law," which the court was obligated to apply. *See, e.g.*, *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 & n.5 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

Regardless, Cozy Comfort waived this waiver argument by not making it in the district court. "[I]f a party fails to object to a Rule 50(b) motion on the basis of waiver, then the party waives its waiver defense." *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1016 (9th Cir. 2018). *See also Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1203 (Fed. Cir. 2010) (same). Here, Cozy Comfort did not just waive its waiver theory; it affirmatively urged the district court to deny Top Brand's motion because "[t]he proper means for raising this argument is on appeal, not in a Rule 50 motion." Appx15010. Yet now Cozy Comfort urges (incorrectly) that this argument is *im*properly raised on appeal.

As for Cozy Comfort's claim that Top Brand waived its claim-construction arguments at the jury-instruction phase (CCBr.22–23), that, too, is incorrect. *First*, objections to jury instructions are not a prerequisite for appealing the denial of JMOL. *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1252 (Fed. Cir. 2005) ("JMOL can be granted either before or after the jury has rendered a verdict, and it does not depend on how the jury was instructed."); *Markman*, 52 F.3d at 975 &

- 3 -

n.5.  *Second*, even to preserve instructional error, Top Brand did not need to object (yet again) at the charge conference because it had repeatedly—albeit unsuccessfully—asked the court to perform its duty to "assess[] and describe[] the effect" of Cozy Comfort's prosecution-history representations.  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008) (en banc).  Parties need not engage in further "futile but unnecessary" acts to "warn the court and the opposing party that there has been an error of law."  *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1380–81 (Fed. Cir. 2004); *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359 (Fed. Cir. 2008); *see Brown v. AVEMCO Inv. Corp.*, 603 F.2d 1367, 1370 (9th Cir. 1979).  And *third*, Cozy Comfort is judicially estopped from making this argument, having persuaded the district court that "[t]he proper means for raising this argument is on appeal" in order to induce denial of Top Brand's Rule 50(b) motion.  Appx15010.  "[P]laying fast and loose with the courts to suit the exigencies of self interest"—telling the district court one thing to secure denial of a post-trial motion, and then telling this Court something entirely different—is textbook judicial estoppel.  *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1303 (Fed. Cir. 2002).

In sum, there was no waiver.  Top Brand's JMOL motion was properly framed, as were its objections to the court's refusal to address claim scope.

**B.    Top Brand Is Entitled To JMOL.**  Cozy Comfort says the district

court properly construed the claim (CCBr.24–26), and that a narrower construction

would not have changed the result.  CCBr.26–31.  Both contentions fail.

*First*, the court gave the jury *no* construction.  It simply told the jury that the

scope of the claim was "the design defined in the '788 patent"—full stop.

Appx14554.  This bare-bones instruction left the jury to wander through trial

evidence about prosecution history and disclaimer, as Cozy Comfort itself notes.

CCBr.28–30.  But claim scope is a law question, not a fact question for the jury—

*Markman* settled that almost 30 years ago.  *See also O2 Micro*, 521 F.3d at 1360.

The scope of Cozy Comfort's surrender was likewise for the court.  *See, e.g.*, *Festo

Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733–34, 734–35

(2002); *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694,

700–05 (Fed. Cir. 2014).  Indeed, this case is Exhibit A for why trial courts have a

duty to "guide the finder of fact" on issues that "bear on the scope of the claim,"

including "assessing and describing the effect of any representations that may have

been made in the course of the prosecution history."  *Egyptian Goddess*, 543 F.3d

at 680.

*Second*, the court's non-construction was incorrect.  Cozy Comfort

implicitly admits this by saying, "[a]t most, Cozy Comfort surrendered designs

having a substantially similar appearance to the White design." CCBr.28–29. But the jury was not charged with *any* scope of surrender—not even this.

*Third*, Cozy Comfort's surrender was not just a surrender of White and designs "substantially similar" to it—its surrender was far broader. Cozy Comfort's appellate argument blinkers what it *told* the examiner, which was far more than 'our design isn't White.' There, while admitting that its claimed design was "unquestionably similar" to White (Appx15106), Cozy Comfort distinguished its design from White by making specific, express representations *about its own claim's scope*—it repeatedly described the precise dimensions and location of "[t]he claimed marsupial pocket," "the pocket in the claimed design," "the pocket in the inventive design," and "the sleeves of the inventive design," expressly calling all of these aspects of "the claimed design," "the inventive design," or "the inventive garment." Appx15107–15110. These were not just statements that White was different; they were specific representations about the '788 patent's limited scope:

- "Marsupial Pocket is Much Higher on the Torso"—"*[t]he marsupial pocket in the claimed design* is much higher on the torso of the inventive garment"—it "occupies approximately the middle third of the torso" (Appx15107);

- "Marsupial Pocket is Above the Bottom of the Torso"—it is "located in the middle third of the torso *in the claimed design*," so that "there is a gap or space above the bottom of the torso," "a significant portion of the front of the torso is clearly visible between the bottom of the marsupial pocket and the bottom of the torso," and "[t]he pocket is

located at the bottom of the torso, anchoring the pocket to the bottom" (Appx15108);

- "Marsupial Pocket is Narrow"—"*[t]he pocket in the inventive design is approximately one-third of the width of the torso*" (Appx15108);

- "Collective Differences"—"the dimensions of the lower portion of the pocket and the upper or open portion of the pocket, and the orientation of the entrances along the upper or option portion" are "distinct," "significant" features "disposed right on the front *of the design*" (Appx15109);

- "Sleeves are Larger"—"*[i]n the Enlarged Over-Garment*" [the "*inventive garment,*" Appx15107], "the bottom of the armscye [armhole] is actually below the top of the marsupial pocket," giving "*the inventive garment ... different relative proportions and locations of the armscyes and the marsupial pocket*" (Appx15109); and

- "Angle of Bottom Hem is Different"—"*[i]n the inventive design*, the bottom hem slopes downward." Appx15110.

A proper claim construction would not have left the jury at sea with just the patent's figures, the accused products, and the ordinary-observer test; it would have "guide[d] the finder of fact" by instructing the jury that "the effect of [these] representations" legally limited "the scope of the claim." *Egyptian Goddess*, 543 F.3d at 680.

As another court observed in related litigation, Cozy Comfort is playing fast and loose with its patent: The claimed features that "Cozy Comfort now dismisses as unimportant mattered a great deal when Cozy Comfort sought to distinguish its design from the prior art." *Cozy Comfort Co. LLC v. Individuals, et al. Identified on Schedule A to Complaint*, No. 23-CV-16563, 2024 WL 2722625, at *5 (N.D.

Ill. May 28, 2024) (*Cozy Comfort (Schedule A)*).  To allow Cozy Comfort to escape the consequences of what it told the examiner—and the public—about the scope of its "inventive design" would vitiate patent law's public-notice function. *Traxcell Techs., LLC v. Nokia Sols. & Networks Oy*, 15 F.4th 1136, 1144, 1146 (Fed. Cir. 2021); *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019); *PODS, Inc. v. Porta Stor, Inc.*, 484 F.3d 1359, 1368 (Fed. Cir. 2007).

These clear, unequivocal statements were not rendered "ambiguous" because of "[t]he nature of design patents" or "the ordinary observer test."  CCBr.25.  Under Cozy Comfort's view, even these crystal-clear statements of the scope of its "inventive design" could not be relied upon.  This is nonsense.  It would grant applicants free rein to make any arguments needed to gain allowance without later consequence—all to the detriment of the public-notice function of patents and file histories.  As just one example of this absurdity, how can the public rely on Cozy Comfort's statement that "[i]n the inventive design, the bottom hem slopes downward" (Appx15110), when Cozy Comfort now seeks to use that same "inventive design" to exclude shirts whose bottom hems do *not* slope downward?

*Fourth*, JMOL of noninfringement is compelled.  As Top Brand showed (TBBr.17–19, 38–41), numerous aspects of the accused designs fall outside the scope of what Cozy Comfort told the examiner its "inventive design" was.

- The accused products' marsupial pockets are not "approximately one-third of the width of the torso" (Appx15108)—they occupy two-thirds of the torso front.  Appx17028; *see* TBBr.17 (illustration).

- The accused products have straight, outward-flaring hemlines.  Appx17028; Appx24087 (50:18–25); Appx24092 (55:4–5); TBBr.17.  This is outside the scope of Cozy Comfort's representation that "[i]n the inventive design, the bottom hem slopes downward."  Appx15110.

- And—except for two lines of Top Brand products—the bottoms of the accused products' armholes are not "actually below the top of the marsupial pocket" (Appx15109), as Cozy Comfort said its "inventive garment" required.  *See* Appx17028; TBBr.18–19.

Each of these material differences from the correct, limited scope of Cozy Comfort's claim—*none of which Cozy Comfort disputes as a factual matter*—compels judgment of noninfringement.  *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1578 (Fed. Cir. 1995); *Hartco Eng'g, Inc. v. Wang's Int'l, Inc.*, 142 F. App'x 455, 459 (Fed. Cir. 2005); *Precor Inc. v. Life Fitness*, 13 F. App'x 913, 920 (Fed. Cir. 2001).

*Finally*, Cozy Comfort's efforts to show that the jury's verdict is "well-supported" (CCBr.27) notwithstanding its surrender cannot save it from reversal.

    **a.**    *Pacific Coast Marine* is indeed "instructive" (CCBr.27), but not in a way that helps Cozy Comfort.  *Pacific Coast Marine* established that "prosecution history estoppel applies to design patents as well as utility patents," *id.* at 700, and held that when the applicant elected one design and canceled the unelected designs in response to an examiner's restriction requirement, *id.* at 698,

the applicant surrendered claims to the unelected designs when it canceled them by amendment.  *Id.* at 702–03.

This case, of course, involves no amendment or cancellation.  But it does involve clear, unequivocal prosecution statements about the limits of claim scope.  And it has long been the law that prosecution-history estoppel also arises, and patent applicants surrender claim scope, when they make clear, unequivocal statements about what their claims do, and do not, cover.  *See, e.g.*, *Pharma Tech Sols., Inc. v. LifeScan, Inc.*, 942 F.3d 1372, 1380–81 (Fed. Cir. 2019).  While Cozy Comfort insists that it did not "surrender[] the full range between the claimed design and the White reference" (CCBr.28), it is whistling past every one of its clear, unequivocal prosecution statements to make that implausible claim.

Cozy Comfort did not just cancel unelected designs in response to a restriction requirement like in *Pacific Coast Marine*.  Cozy Comfort said exactly what its claim was limited to—with respect to, *inter alia*, pocket size, location, and hem slope.  By doing so, Cozy Comfort surrendered claim coverage for designs lacking those features.  *NIKE, Inc. v. Skechers U.S.A., Inc.*, No. LA-CV17-08509, 2020 WL 10486482, at *8 (C.D. Cal. Oct. 26, 2020) (design patents not infringed because applicant "stated a critical aspect of its claimed design as a basis to distinguish it from" prior art during prosecution; distinguishing *Pacific Coast Marine* because patentee "did not simply state that its claims do not extend to a

particular design, as might happen in connection with a restriction requirement"). "Clear assertions made during prosecution in support of patentability, whether or not actually required to secure allowance of the claim, may also create an estoppel because the relevant inquiry is whether a competitor would reasonably believe the applicant had surrendered the relevant subject matter." *Pharma Tech*, 942 F.3d at 1380 (cleaned up).  This rule applies with full force to design patents.

> **b.**    Cozy Comfort's further suggestion that the jury implicitly found the claimed design was "closer" to the accused sweatshirts than to the prior art (CCBr.30) poses the wrong question.  "[W]hether the accused device is 'closer' to the patented design than to the prior art is not the controlling inquiry." *Wing Shing Prods. (BVI) Co. v. Sunbeam Prods., Inc.*, 665 F. Supp. 2d 357, 368 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 956 (Fed. Cir. 2010).  *See also, e.g.*, *Voltstar Techs., Inc. v. Amazon.com, Inc.*, No. 13-C-5570, 2014 WL 3725860, at *3 (N.D. Ill. July 28, 2014), *aff'd*, 599 F. App'x 385 (Fed. Cir. 2015) ("[W]hether the accused and patented devices are more similar to each other than they are to the prior art is not the dispositive test.").

*    *    *    *

In sum:  Top Brand does not infringe the '788 patent, properly construed to take account of Cozy Comfort's clear surrenders of claim scope.  Judgment of noninfringement should follow.

- 11 -

## II.    TOP BRAND IS AT MINIMUM ENTITLED TO A NEW TRIAL IN VIEW OF LKQ AND COZY COMFORT'S LETHAL UTILIZATION OF ROSEN-DURLING AT TRIAL

On May 21, 2024, this Court, en banc, "overrule[d] the *Rosen-Durling* test requirements that the primary reference [for assessing design-patent nonobviousness] must be 'basically the same' as the challenged design claim and that any secondary references must be 'so related' to the primary reference that features in one would suggest application of those features to the other." *LKQ*, 102 F.4th at 1287.  This now-"overrule[d]" statement of the law was virtually *verbatim* the language with which the jury was charged 27 days earlier.  Appx14571; Appx14830 (Top Brand's new-trial motion; showing side-by-side comparison of *LKQ* holding and *Rosen-Durling* instruction given here); TBBr.25 (quoting district court's *Rosen-Durling* instruction in full).

Cozy Comfort responds with the breathtaking position that *LKQ* "did not eliminate" the *Rosen-Durling* test.  CCBr.33 ("While the Court rejected the rigidity of the *Rosen-Durling* test, it did not eliminate that test.").  From that dubious premise, Cozy Comfort asserts that "[t]he district court's instruction ... properly apprised the jury of the law regarding obviousness as set forth in *LKQ*...." CCBr.31.  *See also* CCBr.33 ("The instruction was correct under *LKQ*"); *id.* ("Top Brand cannot show that the district court erred in its instruction—because it was legally correct.").

Of course this Court "eliminat[ed]" the *Rosen-Durling* test. *LKQ*, 102 F.4th at 1301 ("As with any change, there may be some degree of uncertainty for at least a brief period, *but our elimination of the rigid* Rosen-Durling *test* is compelled by both the statute and Supreme Court precedent."). The Court's order granting en banc rehearing asked whether it should "eliminate or modify the *Rosen-Durling* test," 71 F.4th 1383, 1384 (Fed. Cir. 2023); it opted for "elimination." *See also LKQ*, 102 F.4th at 1287 ("overrule[d]"); *id.* at 1293 ("out of keeping with" Supreme Court precedent); *id.* at 1294 ("inconsistent with the Supreme Court's general guidance in *KSR*"); *id.* at 1297 ("we abandon it today"). Even Judge Lourie characterized the en banc majority as having "decisively overruled" *Rosen* and *Durling*. *Id.* at 1304 (Lourie, J., concurring in judgment); *see also Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, No. 17-cv-01781, 2024 WL 4643096, at *2 (S.D. Cal. Oct. 30, 2024) (granting Rule 60(b)(6) relief from stipulated judgment because "[t]he *en banc* decision in *LKQ* was extraordinary, overturning decades-old and improperly-rigid precedent"); *Cozy Comfort (Schedule A)*, 2024 WL 2722625, at *3 n.4 (noting that the jury in this case "was instructed based upon the then-governing more 'rigid' test, and thus it is possible that the [Arizona] jury would have decided the question differently under *LKQ Corp.*'s more flexible analysis"). Even Cozy Comfort characterized *LKQ* in the district court by referring to its "*removal* of the *Rosen-Durling* requirement."

Appx14984–14985.  Cozy Comfort disrespects this Court by refusing to honor the

words of its en banc opinion.

As for Cozy Comfort's "waiver" argument:  The law does not require parties

to be so "clairvoyant" that they anticipate intervening decisions like *LKQ* in their

instructional objections.  *Phillips v. Cameron Tool Corp.*, 950 F.2d 488, 491–92

(7th Cir. 1991) (citing *Robinson v. Heilman*, 563 F.2d 1304, 1307 (9th Cir. 1977));

TBBr.42.  Further, as with its earlier waiver argument (p.3, above), Cozy Comfort

did not make a "waiver" objection in response to Top Brand's new-trial motion

(Appx14982–14987), meaning its new waiver argument is waived now.  And Cozy

Comfort's appellate-waiver argument is also judicially estopped—it similarly told

the district court that Top Brand's "request for a new trial should be denied under

Rule 59(e) *and more properly addressed on appeal*."  Appx14987; *see* p.4, above.

Finally, the district court's discretionary denial of Top Brand's new-trial motion

(Appx00003–00004) cannot be affirmed on "other grounds upon which the district

court might have based its decision" but did not.  *Bio-Rad Laboratories, Inc. v.

Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).  There was no

waiver.

The *Rosen-Durling* instruction was prejudicially erroneous.  For one, the

jury was told it "must" apply *Rosen-Durling*.  Appx14571; TBBr.42–43.

Everything else the jury was told about its ability to apply the *Graham* factors (*see*

CCBr.34–35; Appx14571–14572) made no difference once the court imposed *Rosen-Durling* as a mandatory, "must" hurdle at the outset of the instruction. That instruction, made error by this Court's intervening *LKQ* decision, compels reversal and a new trial.

For another, Cozy Comfort made this error lethal by impeaching Top Brand's expert, and then excoriating her in closing for failing to follow *Rosen-Durling*. Cozy Comfort is conspicuously silent in responding to Top Brand's showing (TBBr.43–44) regarding this prejudice. Instead, Cozy Comfort's appellate strategy reflects its reckless misreading of *LKQ*, doubling down on criticizing Ms. Gamble for not "apply[ing] the *Rosen-Durling* framework" (CCBr.36) and calling her testimony "flawed under *Rosen-Durling*." CCBr.37. Its undeveloped, conclusory claim of harmless error (CCBr.32) wholly ignores the harmful way that its counsel capitalized on this error.

In sum: The district court should have granted a new trial in view of *LKQ*. Cozy Comfort's claim that *Rosen-Durling* survived the en banc decision that expressly "eliminat[ed]" it speaks volumes about its responsive arguments. This Court should, at minimum, reverse and order a new trial.

## III.   THE COURT SHOULD ORDER JUDGMENT OF NO TRADEMARK INFRINGEMENT

Top Brand never used Cozy Comfort's registered trademark—"*THE COMFY*." Cozy Comfort agrees. CCBr.38. No reasonable jury could have found

infringement:  Cozy Comfort presented no evidence that Top Brand used the mark, and the word it *did* use—"comfy"—is purely descriptive.

Cozy Comfort nonetheless claims that "non-identical marks that are similar in terms of sight, sound, and connotation and used on similar goods are likely to cause confusion." CCBr.39.  But Cozy Comfort's cases are no help to it.  In *Perfumebay.com Inc. v. eBay, Inc.*, the Ninth Circuit agreed that use of the conjoined word "Perfumebay"/"PerfumeBay" infringed the "eBay" trademark. 506 F.3d 1165, 1174 (9th Cir. 2007).  It highlighted that "'Perfumebay' *incorporates the eBay trademark in its entirety*, especially when Perfumebay utilizes the spelling as 'PerfumeBay.'" *Id.*  By contrast, defendant's use of non-conjoined forms—"Perfume" and "Bay"—did *not* infringe, because they "do not include eBay's entire mark." *Id.* at 1181–82.  So too here:  Top Brand's use of "comfy" does not include Cozy Comfort's "entire mark"—THE COMFY.  It does not infringe.

Cozy Comfort's other cases are likewise distinguishable.  In *S.C. Johnson & Son, Inc. v. Drop Dead Co.*, defendant's use of "PROMISE" (for furniture polish) infringed plaintiff's mark "PLEDGE," where, "[by] the time [the] action was instituted the imitation of the label by the defendant was so slavish that even the color scheme and the contrast between the letters on the cans and labels were imitated." 210 F. Supp. 816, 817 (S.D. Cal. 1962).  Additionally, plaintiffs

presented evidence from 17 witnesses who "testified that the presence of the defendants' product on the same shelf in the markets as the plaintiff's product *caused confusion in their minds* and led them to believe the imitated product of the defendants to be a *new* product marketed by the plaintiff." *Id.* (emphasis in original). But here, Cozy Comfort presented no actual-confusion evidence. Top Brand's brief, singular use of the generic, descriptive adjective "comfy" to describe its comfortable apparel is the polar opposite of "slavish" copying of a product label.

*In re Viterra Inc.* is also inapposite. There, this Court affirmed a TTAB decision holding that "XCEED" was likely to cause confusion with the registered trademark "X-Seed," where both were used for identical goods, were "phonetic equivalents," and "visually similar." 671 F.3d 1358, 1359, 1360 (Fed. Cir. 2012). But XCEED was a made-up word, not a generic, descriptive adjective like "comfy."

Cozy Comfort derides Top Brand's arguments as "post-hoc claims of descriptive use." CCBr.41. Not so: Mr. Ngan testified that he used "comfy" to "*describe the product*, how soft." Appx23771 (199:7–10). And Top Brand's Catalonia website also (briefly) included the description "very comfortable," confirming Top Brand's descriptive intent. Appx23773 (201:11–15).

With no record evidence to support its verdict, Cozy Comfort levies irrelevant accusations about Mr. Ngan's trademark application for "Comfy Pajamas," citing *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022, 1031 (9th Cir. 2024). CCBr.41. But *Punchbowl*, like *Perfumebay.com*, involved use of the mark holder's complete registered mark ("Punchbowl®"), in its entirety by the accused infringer ("Punchbowl News"). *Id.* at 1025–26.

None of Cozy Comfort's cases hold that the owner of a registered trademark can subdivide the mark and claim exclusive ownership in the pieces. Nor do its authorities hold that Cozy Comfort can claim exclusionary rights over using the English language to accurately describe sweatshirts as "comfy"—that was done long before Cozy Comfort ever existed. Cozy Comfort could never have obtained a trademark on "COMFY" alone without, at minimum, demonstrating that the word had acquired secondary meaning. *Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866, 872 (9th Cir. 2002). That is why Cozy Comfort could only register THE COMFY, not COMFY by itself. *See also* Appx24275 (68:23–25); Appx16491. Cozy Comfort has improperly backdoored a monopoly on an ordinary adjective. "To take a descriptive term out of the public domain, a plaintiff must demonstrate that the relevant buying public accords it secondary meaning." *Japan Telecom*, 287 F.3d at 875. This Cozy Comfort has never done.

In sum:  No reasonable jury could have found that Top Brand owes millions of dollars to Cozy Comfort for describing comfortable sweatshirts as "comfy," in light of the absence of record evidence that the actual registered trademark was ever used.  The trademark-infringement judgment should be reversed.

## IV.   IF THE JUDGMENT IS NOT REVERSED OUTRIGHT, THE COURT SHOULD REMAND FOR THE DISTRICT COURT TO DETERMINE DISGORGEMENT

The district court thought the jury was the right body to decide disgorgement on a single ground—"the jury was not advisory on the issue of infringement." Appx00005.  Cozy Comfort does not defend this reasoning.  Instead, it rehashes "consent" theories the district court never accepted.  If anything remains of this case after disposition of Top Brand's liability arguments in Sections I–III, above, the case should be remanded for the district court to make the disgorgement determinations that equity demands.

**A.     Disgorgement Was the District Court's Job.**  Disgorgement is an equitable remedy committed to courts, not juries.  TBBr.49–52.  This is true whether disgorgement is sought for trademark infringement, trade-secret misappropriation, or design-patent infringement.  As this Court held in Texas Advanced Optoelectronic Solutions:  "The apparent fact is that for patent infringement, disgorgement of profits was not historically available at law.  As for copyright and trademark infringement, we have seen no support for concluding

that disgorgement of profits was available at law for those wrongs." 895 F.3d at 1324–25. Accordingly, no jury trial right for such disgorgement claims exists— and this is true even if "a wrong [here, design-patent and trademark infringement] undisputedly had to be adjudicated by a jury." Id. at 1319.

Cozy Comfort just ignores *Texas Advanced Optoelectronic Solutions*—its brief never bothers to cite it. But it is the most extended treatment of the equitable disgorgement jury-trial issue to be found anywhere in the federal-court system. It compels the conclusion that the district court was wrong not to itself decide disgorgement. As *Texas Advanced Optoelectronic Solutions* notes, the defendant there argued, and this Court agreed, that "the district court had to treat the jury verdict on disgorgement as merely advisory, *see* Fed. R. Civ. P. 39(a), (c), and had to 'find the facts specially and state its conclusions of law separately' on disgorgement, Fed. R. Civ. P. 52(a)(1)." 895 F.3d at 1319.

Cozy Comfort seems to agree that disgorgement is an equitable remedy for the court. As to trademark infringement, it invokes the district court's "'broad discretion' in fashioning a remedy" (CCBr.44)—judges, not juries, are invested with such remedial "discretion." And it premises its "consent" arguments with "Simply because a party does not have a right to a jury…." CCBr.47.

To start, the court was presented with Cozy Comfort's "consent" argument (Appx14964–14969), but did not accept it. Instead, the court believed it

appropriate to submit disgorgement to the jury solely because "the jury was not advisory on the issue of infringement." Appx00005. *Texas Advanced Optoelectronic Solutions* holds that this reasoning was error. 895 F.3d at 1319.

To the extent it is even appropriate for Cozy Comfort to now urge "consent" to defend the court's refusal to address disgorgement, Cozy Comfort is wrong: Its contention that "Top Brand maintained it wanted a jury trial on all issues" (CCBr.47–49) and thereby consented misstates the record: Top Brand's demand was for a jury only "on all issues *so triable*." Appx04154; *see also* Appx00188; Appx00374; Appx01962. Disgorgement is not "so triable" before a jury—Cozy Comfort essentially admits that (CCBr.47), and *Texas Advanced Optoelectronic Solutions* holds that these disgorgement remedies were not juriable at law: After an exhaustive historical survey, this Court concluded that there was no historical support for the availability of disgorgement of profits either "for patent infringement" or "for … trademark infringement." 895 F.3d at 1324–25. Cozy Comfort certainly never suggests that such disgorgement is a juriable remedy. In this light, participating in jury instructions and a verdict form on these advisory issues under Rule 39(c)(1) (CCBr.47–48) does not indicate consent, either.

In sum: Top Brand did not consent to have disgorgement tried to a jury. As in *Texas Advanced Optoelectronic Solutions*, the equitable remedy of disgorgement was necessarily submitted to the jury on an advisory basis under

Rule 39(c)(1).  *Id.* at 1319–26.  Cozy Comfort has no "free-floating right to a jury trial, as to a concededly equitable issue" such as trademark- and design-patent-infringement disgorgement.  *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, 28 F.4th 35, 41 (9th Cir. 2022).

**B.     Equity Favors Eliminating or Reducing Any Disgorgement Remedies.**  Cozy Comfort's brief demonstrates the excessiveness, duplication, and inherent unfairness of the jury's award, all of which equity would abhor.

*First*, the damages questions given to the jury (Appx14524, Appx14526, Appx14533, Appx14535) did not allow it to weigh Cozy Comfort's adjudicated bad-faith conduct in the balance, including its impermissible campaign of takedown activities and smug, "unapologetic" celebrations, or its pursuit of objectively meritless claims such as trade-dress infringement and patent-infringement claims on patents ruled invalid on summary judgment.  *See* TBBr. 55–56.  On these scores, Cozy Comfort has nothing to say.  A court sitting in equity could—and should—conclude on these facts that Cozy Comfort should not receive any disgorgement remedy, and its design-patent-infringement recovery should be limited to the statutory $250 figure.  *See* 35 U.S.C. § 289.

*Second*, Cozy Comfort presents this case as a simple one of having proved a case of gross revenues, and Top Brand failing to prove appropriate deductions.  CCBr.53.  That, again, is untrue.  The jury's award of $15.4 million for design-

- 22 -

patent infringement was a punitive sanction of more than quadruple Top Brand's net profits. Cozy Comfort's damages expert, Mr. Cook, testified that Cozy Comfort's damages claim was based on "the gross profit number there of $15.4 million." Appx24848 (108:19); *see also* Appx24858 (118:20–21) (Mr. Cook testifying that Cozy Comfort sought "the full gross profit, which is sales revenue"). The jury awarded the exact figure Mr. Cook calculated as Top Brand's "gross profit" for infringing the '788 patent: $15,394,978.00. Appx14524.

As the Supreme Court held in *Liu v. SEC*, 591 U.S. 71 (2020)—yet another authority ignored by Cozy Comfort—a party seeking disgorgement is "prohibited" from "seeking an equitable remedy in excess of a defendant's net profits." *Id.* at 85; TBBr.57–59. Awarding gross profits unfairly punished Top Brand, contrary to the rule that disgorgement is "remedial and not punitive." *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978).

While Cozy Comfort seeks to fault Top Brand's evidence of deductions, CCBr. 51–52, Top Brand showed that its net profits from the sale of the products found to infringe was $3,818,678.95, approximately *one-quarter* of the $15.4 million gross-profits figure the jury awarded. Appx23120–23127. No record evidence contradicts Top Brand's net-profits figure; Cozy Comfort points to none. Nor does Cozy Comfort cite any pertinent authority suggesting that substantial net-profits evidence can just be ignored—a court sitting in equity and making Rule 52

findings would at least have had to deal with that evidence. *Lindy Pen Company v. Bic Pen Corporation*, which Cozy Comfort cites repeatedly (CCBr.51–52), did not even reach the net-profits evidence, because Lindy Pen "failed to make a prima facie showing of Bic's unjust enrichment." 982 F.2d 1400, 1408 & n.9 (9th Cir. 1993).

*Third*, the trademark-infringement disgorgement awards should be vacated. Cozy Comfort insists that the jury's twin disgorged-profit awards of $1.54 million each ($3.08 million total) for trademark infringement were proper, claiming that Top Brand generated over $60 million in *sales* since 2018 (not even gross or net profits). CCBr.46–47. There are three reasons these awards cannot stand.

     **a.**     The Ninth Circuit assigns disgorgement remedies to the judge, not the jury. TBBr.49–52; *Harbor Breeze*, 28 F.4th at 39.

     **b.**     These awards reflect evidence-free speculation. TBBr.47–48; *McClaran v. Plastic Indus., Inc.*, 97 F.3d 347, 361 (9th Cir. 1996). Cozy Comfort cannot muster any evidence to support these awards, each of which reflected exactly 10%, to the penny, of Top Brand's alleged gross profits from the products found to infringe Cozy Comfort's '788 patent. Neither does Cozy Comfort point this Court to where it offered the jury even a scintilla of evidence to support *any* award for the trademark-infringement claims—its damages expert, Mr. Cook,

never even mentioned "trademark" in his testimony.  *See* Appx24837–24885 (97:24–145:19).*

      **c.**    These awards reflect a double recovery.  TBBr.59–62; *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1016–17 (Fed. Cir. 2006).  The jury's trademark-infringement awards are based on the same sales as the design-patent-infringement award.  This is how Cozy Comfort presented the case in closing—its lawyer urged the jury that "every single one of Mr. Ngan's Amazon sales are potentially a result of his trademark infringement."  Appx25100 (154:9–10).  He attributed the same amount as "the full amount of damages it is entitled to under the law" under all claims.  Appx25128 (182:5); *see also* Appx25125 (179:17–21), Appx25126 (180:13–16).

      Cozy Comfort speculates that the jury might have relied on other sales—pre-patent-issuance sales in 2018 and the first three quarters of 2019, and four lines of products not accused of patent infringement—for its trademark-infringement awards.  CCBr.54–55.  But Cozy Comfort never made such fine distinctions in its evidence and argument; it never told the jury that the 2018-21 sales should be

---

      * He did, however, provide an expert report in which he calculated Top Brand's *revenues* attributable to trademark infringement as $3,577 for the period March 5 to December 2, 2021, and $376 for the period April 11 to July 27, 2021 (Appx22565)—a far cry from the $3.08 million speculatively awarded by the jury on no evidence whatsoever.

excluded from the design-patent-award base; and its expert never suggested that 10% of the design-patent infringement award base was the right metric for each trademark-infringement claim (Appx24837–24885 (97:24–145:19))—a claim he could not have credibly made, given that he calculated a whopping $3,577 in *revenues* attributable to the single alleged trademark infringement "made through cataloniastore.com." Appx22564–22565. Indeed, that allegedly infringing act took place in 2021. Appx20492; Appx22564. So, 2018-21 sales could not possibly support the jury's trademark-infringement awards. CCBr.54–55.

In sum: Trademark disgorgement was not juriable. The awards should be vacated as speculative and duplicative regardless.

## V.   THE COURT SHOULD ORDER JUDGMENT THAT JOHN NGAN IS NOT AN ALTER EGO OF THE CORPORATE DEFENDANTS

Cozy Comfort's ultimate overreach came in seeking to hold John Ngan personally liable under an Arizona-state-law alter-ego theory. Cozy Comfort has not shown record support for the jury's extraordinary determination to hold Mr. Ngan personally liable.

Once again, Cozy Comfort's brief is notable for what it omits: Under the jury instruction that all agree correctly stated Arizona law (*see* CCBr.56 & n.3), more than just unity of control and that observing the corporate form would "promote injustice" (CCBr.55) have to be shown in this case involving an individual shareholder of closely held companies—"*there needs to be proof* that

the [individual] disregarded the corporate entity and made it an instrument to conduct his own personal affairs." Appx14551. This was how Cozy Comfort itself described the supporting authority for its proposed jury instruction (Appx11849), yet its brief here—and the record it made in the district court—is bereft of any such evidentiary showing.

Cozy Comfort has taken the commonplaces of closely-held companies, such as close supervision and personal investment, and spun a wild tale—rife with adjectives; short on substance. *See* CCBr.55–61. This is what the plaintiffs in *Chapman v. Field*, 602 P.2d 481 (Ariz. 1979), tried, without success. In *Chapman*, two married couples formed the "Andrew Investment Corporation" to buy a Phoenix car wash. When the deal cratered, the sellers sued, contending that Andrew Investment Corporation was the alter ego of the two couples, who the plaintiffs wanted to hold personally liable. *Id.* at 483. The sellers urged veil-piercing due to "(1) the clear lack of and disregard for corporate formalities; (2) a constant course of conduct involving the intermingling and commingling of personal and corporate assets and funds during the entire life of the alleged corporation; and (3) confusion among the individual defendants as to which corporation was the owner of the … Car Wash." *Id.* at 484. Even while "agree[ing] that the evidence shows that the conduct of the stockholders of the Andrew Investment Corporation was not a model of corporate management," *id.*,

the Arizona Supreme Court honored Arizona's "rule that corporate status will not be lightly disregarded," *id.* at 483, and refused to view the individuals as alter egos of the corporation. *Id.* at 484.

The individuals in *Chapman* were far less respectful of the corporate form than was Mr. Ngan—but they were not alter egos. "For example, they lent money to the corporation without taking promissory notes, failed to file annual reports with the Arizona Corporation Commission, and failed to keep proper books of account." *Id.* Yet "there is no showing of fraud on the part of the buyers, nor is there any indication that the sellers were misled.… There was not a sufficient showing that the unity of the interest of the incorporators with the corporation was such that the corporation had lost its separate identity … or had, in fact, ceased to exist." *Id.*

The same result should follow here, particularly taking into account Arizona law's strong presumption that corporate entities are separate and legitimate, *see* TBBr.65–68, its insistence that "corporate status will not be lightly disregarded," *Chapman*, 602 P.2d at 483, and its record of veil-piercing only in "rare cases," *Mid Am. Title Co. v. Transnation Title Ins. Co.*, 332 F.3d 494, 495 (7th Cir. 2003). As *Chapman* recognizes, "a legitimate purpose of incorporation is to avoid personal liability and if the corporate fiction is too easily ignored, * * * then incorporation is

- 28 -

discouraged." 602 P.2d at 483 (quoting *Dietel v. Day*, 492 P.2d 455, 457 (Ariz. Ct. App. 1972)).

The parallels with *Chapman* are striking: Cozy Comfort's best "evidence" amounts to claiming a contradiction in Mr. Ngan's testimony about his transfer of money *from himself to his corporation*. CCBr.62. But Mr. Ngan invested his own money into the companies to help them thrive—hardly a fraudster's *modus operandi*. *Compare Chapman*, 602 P.2d at 484 (shareholders lent money to the corporation without taking promissory notes). Cozy Comfort again declines to address these inconvenient facts.

Then there is Cozy Comfort's characterization of Top Brand's contracts. Cozy Comfort labels Top Brand's warehouse rent and management fees, paid to a related company, as "self-dealing." CCBr.59–60. But Cozy Comfort never established that these payments were inappropriate, or reflected anything other than market rates. And when Cozy Comfort calls Top Brand's contractual relationships "agreements between Ngan ***and himself***" (CCBr.57 (emphasis in original)), that takes liberties with the record: As Cozy Comfort itself notes, another related company had an agreement with Walmart (Appx23793–23794 (221:12–222:16)); why would another Top Brand company also need an agreement to avoid having the veil pierced to reach Mr. Ngan personally?

Cozy Comfort also insinuates that Mr. Ngan "[c]ommingled" the companies' books and records. CCBr.58. It is standard practice for "affiliated" LLCs to make combined or consolidated tax returns. 26 U.S.C. § 1501. And even "intermingling and commingling" assets *between related companies* would not be a reason to pierce the veil to reach *Mr. Ngan*. *Compare Chapman*, 602 P.2d at 484 (evidence of "constant course of conduct involving the intermingling and commingling *of personal and corporate assets and funds* during the entire life of the alleged corporation" did not warrant veil-piercing). Stripped of rhetorical flourish, the record shows what Cozy Comfort's own expert testified to—these were no "shell companies." Appx24883–24884 (143:6–144:4). They were financially healthy (Appx18130–18167; Appx18168–18208; Appx22671–22728; TBBr.65), real companies that observed their corporate forms while selling real products—not a front for Mr. Ngan's "personal affairs." TBBr.64.

In sum: Nothing in this record would have allowed a reasonable jury to conclude that Mr. Ngan "disregarded the corporate entity and made it an instrument to conduct his own personal affairs." Appx14551. The opposite is true: If anything, Mr. Ngan disregarded his own interests, invested his own money into the businesses, and is being forced to suffer the consequences of having that investment used as evidence to pierce the corporate veil.

## **CONCLUSION**

The judgment should be reversed as a matter of law.  Alternatively, it should

be reversed, and the case remanded for further proceedings.

Dated:  December 31, 2024

Respectfully submitted,

*/s/  Gregory A. Castanias*

Gregory A. Castanias
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939
gcastanias@jonesday.com

John C. Evans
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939
jcevans@jonesday.com

Marlee Hartenstein
JONES DAY
500 Grant Street, Ste. 4500
Pittsburgh, PA 15219
(412) 391-3939
mhartenstein@jonesday.com

Eric M. Fraser
OSBORN MALEDON, P.A.
2929 North Central Ave., Suite 2000
Phoenix, AZ 85012
(602) 640-9000
efraser@omlaw.com

*Counsel for Appellants Top Brand
LLC, Sky Creations LLC, E Star LLC,
Flying Star LLC, and John Ngan*

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(b).

1.    Exclusive of the exempted portions of the brief, as provided in Federal Rule of Appellate Procedure 32(a)(7)(B), the brief contains 6,998 words.

2.    The brief has been prepared in proportionally spaced typeface using Microsoft Word 2016 in 14 point Times New Roman font.  As permitted by Federal Rule of Appellate Procedure 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Dated:  December 31, 2024          */s/ Gregory A. Castanias*
                                   Gregory A. Castanias

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on December 31, 2024, I caused the foregoing REPLY BRIEF FOR APPELLANTS to be electronically filed via CM/ECF with the U.S. Court of Appeals for the Federal Circuit, which electronically served the brief on all counsel of record.

*/s/ Gregory A. Castanias*
Gregory A. Castanias